UNITED STATES, Appellee,

v.

Private First Class Edward A. EVANS, SSN 435–96–7470, United States Army, Appellant.

CM 436994.

U. S. Army Court of Military Review.

26 Oct. 1978.

578

Colonel Edward S. Adamkewicz, Jr., JAGC, Captain Demmon F. Canner, JAGC, and Captain William J. Carter, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major Michael B. Kennett, JAGC, and Captain Carl F. Meyer, Jr., JAGC, were on the pleadings for appellee.

Before DE FIORI, CARNE and THORNOCK, Appellate Military Judges.

## OPINION OF THE COURT

THORNOCK, Judge:

Appellant was tried by a general court-martial with members in the Federal Republic of Germany as a principal in a five-man rape of a sixteen-year-old German girl in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. He was sentenced to a bad-conduct discharge and confinement at hard labor for seven years. This case is before us for mandatory review as required by Article 66, UCMJ, 10 U.S.C. § 866.

Appellant urges as error *inter alia* that the evidence at trial was insufficient to prove appellant's guilt beyond a reasonable doubt; that the Government failed to prove jurisdiction over the appellant; instructional errors by the military judge, and a defect in the post-trial review of the staff judge advocate. We find no error or prejudice to the appellant in his trial.

I

To properly dispose of the alleged errors a recitation of the pertinent evidence is in order. After a night of visiting various "discos" the victim, Anke H., 16 years old, went to the "Why Not Club" in Wetzlar, West Germany. The club was frequented by young Germans and American soldiers. While there she joined the company of other German girls and some Americans. They departed the club for the apartment of one of the soldiers, Sergeant "G". On the way to the apartment located in Butzbach, some distance away from Wetzlar, the victim understood that the driver of the car agreed to take her home from his apartment after the party there. After spending an uneventful hour or so at the apartment it being approximately 0330 hours, Sergeant "G" indicated he had to report to duty. He testified that he had to "run off" the people at the party. Sergeant "G" offered the victim taxi money to her home, but she was upset because he would not take her as she understood him to have promised. Sergeant "G" indicated he was concerned about the victim because she looked young. He inquired of her age to which he said she replied, 19, and that she was old enough to take care of herself. When it became apparent that Sergeant "G" was not going to give her a ride to her home in Wetzlar, she accepted a ride in a car which ultimately also had the accused and four soldiers in it. These soldiers were all to become her attackers. Appellant now urges that there was consent by Anke to intercourse with all five of the soldiers, four of whom had intercourse with her twice each, and he also so testified thus at trial. The victim denies consent and her lack of consent was corroborated by one of her

assailants, Specialist Four Lewis. Specialist Lewis was the owner and driver of the car in which the rape occurred. He pleaded guilty to rape and was sentenced to confinement at hard labor for six years, total forfeitures, and a dishonorable discharge. Pursuant to a pre-trial agreement with the convening authority, all confinement in excess of 18 months was suspended for 18 months with provision for automatic remission, and the remaining punishments were approved. Specialist Lewis was tried before he testified and his sentence was approved after appellant's trial.

The victim and Lewis both testified of her verbal and physical resistance and to her repeated statements of "no no" at various attempts by her assailants to hold her, touch her, and remove her clothing. She slapped one assailant and bent the fingers of another; there was some evidence that she scratched yet another, and that her arm was twisted by one of the perpetrators. She did not cooperate in the acts of intercourse, she refused to sodomize one of the five while being raped by another and on at least one occasion was held by two of the perpetrators while being raped by a third. On cross-examination, Lewis did waver somewhat by saying that the victim "sort of" consented and "sort of" did not. However, he further qualified that by saying the victim did not resist because " . . . if she had to—if she would have tried to resist that she would have been in fear of being beaten" and that she just "gave in because she would be in fear of all five of us against one. That would be a kind of manslaughter." In essence she had no choice in the matter. There was further testimony that she was threatened to be "hung from a tree" if she did not cooperate. Appellant urges that consent was implicit in the victim's question to the group (after her clothes had been removed and the car stopped in a deserted area), "All five of you?" From the record it appears that the question was one of amazement, fear or pleading incredulousness as opposed to consent. The victim steadfastly denied consent to any sexual intercourse and that she ceased her efforts to resist their advances out of fear. She stated, "I was so scared that they would do something to me—Yes, I attempted to defend myself. What should I do against five individuals?". Notwithstanding the victim's admissions to having had sexual intercourse with at least two boy friends and having ingested birth control pills since age 15 with the consent of her mother, it seems to us beyond cavil that she would consent to nine separate acts of intercourse by five strangers, all larger and stronger than her, in the back seat of a relatively small five-passenger European sedan. Under the circumstances, she no doubt exercised poor judgment in accepting the ride, but that poor judgment did not rise to consent. Consent will not be inferred if resistance would be futile, or where resistance is overcome by fear, threats of death or great bodily harm. Paragraph 199*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). *United States v. Steele*, 43 C.M.R. 845 (A.C. M.R.1971). The members of the court heard the evidence and saw the demeanor of the victim, one of her confessed rapists, and the appellant. By convicting the appellant, they stated they believed enough of the Government's evidence beyond a reasonable doubt to be convinced of appellant's guilt. We are likewise so convinced. The fact finders are in the best position to judge the facts and evaluate credibility of witnesses. This judgment should not be overturned lightly. Under all these circumstances we hold that the victim did not consent to the repeated acts of sexual intercourse. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Frierson*, 20 U.S. C.M.A. 452, 43 C.M.R. 292 (1971); *United States v. Ferretti*, 1 U.S.C.M.A. 323, 3 C.M.R. 57 (1952).

## II

■ Appellant avers that the Government did not prove the jurisdictional predicate for the trial as required by *United States v. Alef*, 3 M.J. 414 (C.M.A.1977). We disagree. *Alef* requires the Government to demonstrate affirmatively through sworn charges the jurisdictional basis for

trial of an accused and his offenses. The rationale, of course, is to give notice to an accused, demonstrate service connection and insure that a proper tribunal is trying the accused. The language of the instant specification does this. The words "at Kirch Goens, Federal Republic of Germany" and "said offense occurring outside the territorial limits of the United States and not being cognizable in a U.S. civilian court" were sufficient to put the appellant on notice that the Government intended to rely on the "overseas exception" to *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 33 L.Ed.2d 291 (1969), as adopted by the United States Court of Military Appeals in *United States v. Newvine*, 23 U.S.C.M.A. 208, 48 C.M.R. 960 (1974).

## A.

■ Appellant urges, however, that there was no evidence adduced at trial to prove the jurisdictional allegations of the specifications, and that judicial notice was neither requested nor taken of the facts that the Federal Republic of Germany is outside the territory of the United States or that the offense was not cognizable in a U.S. civilian court. Although this contention is factually correct, the record is replete with references to Germany, that the offense occurred in Germany and that the victim was German. Appellant's lack of amenability to prosecution in a U.S. civilian court was not an averment necessary to the establishment of court-martial jurisdiction over his offense, *United States v. King*, 6 M.J. 553 (A.C.M.R.1978), and constituted mere surplusage. *Cf. United States v. Long*, 2 U.S.C.M.A. 60, 6 C.M.R. 60 (1952). It would have been better practice for the Government to request the judge to judicially notice the pleaded facts, but we decline to call that delict a prejudicial error, or one fatal to jurisdiction. By its own terms, *United States v. Alef, supra*, established nothing more than a rule of pleading and motion practice. We do not read *Alef* as requiring jurisdictional averments to be proven as elements of the offense, *per se*. The rationale of *Alef*, referred to *supra*, was accomplished by the specification in this case.

## B.

■ Appellant also urges that the specification lacks a statement of cessation of jurisdiction by the Federal Republic of Germany to the United States under the Status of Forces Agreement treaty. We believe that such a statement or proof is not required for the same reasons discussed above. Further the appellant lacks standing to challenge the jurisdiction of a sovereign over him in cases of discretionary exercise of sovereignty by one sovereign rather than another. *Ponzi v. Fessenden*, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922). In *Ponzi* at p. 260, 42 S.Ct. at p. 310, the Supreme Court stated:

One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. . . . Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it. (citation omitted)

Further, our highest court has held that appellant cannot successfully complain about the manner in which the sovereign obtains jurisdiction over him unless he was thereby denied a fair trial. *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). In this case, there is no evidence of denial of fair trial or prejudice to the appellant by the sovereign that tried him, nor are there any complaints about how that sovereign obtained jurisdiction. Therefore, his assignment of error must fail.

## III

We have carefully considered the appellant's remaining assignments of error. In

so doing we have studied the staff judge advocate's review and the military judge's instructions on both findings and sentence. We find that the court members were properly charged by the military judge and that the convening authority was properly advised in the post-trial review. We find these alleged errors to be without merit.

## IV

The findings of guilty are affirmed. Appellant urges that sentence relief is in order due to the disparate results of the cases against the five perpetrators.* We agree. Accordingly, after considering the entire record the Court affirms only so much of the sentence as provides for a bad-conduct discharge and confinement at hard labor for three years.

Chief Judge DE FIORI and Senior Judge CARNE concur.

---

* Two alleged co-actors were acquitted. The witness Lewis received a dishonorable discharge, total forfeitures and six years confinement at hard labor with all confinement in excess of 18 months suspended, with provision for automatic remission. The appellant received seven years confinement at hard labor and a bad-conduct discharge. The remaining accused received a bad-conduct discharge, confinement at hard labor for two years, forfeiture of $200.00 pay per month for 24 months, and reduction to the grade of Private (E-1).