**UNITED STATES, Appellee,**

v.

**Thomas R. OLINGER, Sergeant, U. S. Army, Appellant.**

No. 39,872.
CM 439358.

U. S. Court of Military Appeals.

April 19, 1982.

For Appellant: *Captain John Lukjanowicz* (argued); *Colonel Edward S. Adamkewicz, Jr.,* and *Major Robert D. Ganstine* (on brief).

For Appellee: *Captain Michael R. Smythers* (argued); *Colonel R. R. Boller, Major Ted B. Borek, Major Robert B. Williams,* and *Captain John P. Galligan* (on brief).

*Opinion*

FLETCHER, Judge:

At a general court-martial[1] appellant pleaded guilty[2] to two specifications of larceny of lead of a total value of about $700. His sentence, as approved by the convening authority, included a bad-conduct discharge,

---

1. Appellant was found guilty of two specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921, and sentenced to a bad-conduct discharge, a fine of $1000, forfeiture of all pay and allowances, confinement at hard labor for 1 year, and reduction to the grade of private E–1. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, forfeiture of all pay and allowances, and confinement at hard labor for 7 months. The United States Army Court of Military Review affirmed the findings and sentence.

2. Appellant's pretrial agreement provided that in return for his offer to plead guilty to the offenses charged and restitution in the amount of $1000, the convening authority would approve no sentence in excess of a dishonorable discharge, confinement for 7 months, total forfeitures, fine, and reduction to the lowest enlisted grade. It was further agreed that the convening authority would "[d]ismiss and prohibit the prosecution of all other charges in which a plea of guilty is not entered in accordance with the Pretrial Offer, whether pending at present or not, involving the theft of U. S. Government. lead during the period July through August 1979."

forfeiture of all pay and allowances, and confinement at hard labor for 7 months. This was affirmed by the United States Army Court of Military Review. Now the appellant urges [3] that the affirmance of his case was in error inasmuch as eight other individuals at Fort Eustis, tried by court-martial, did not receive a punitive discharge and were awarded significantly less confinement. While we cannot endorse the handling of this case below, we do not perceive an error of law which requires reversal.

## I

A review of the factual background of this case manifests unauthorized removal of lead scrap both from the Harrisson Road Cargo Yard and from the 155th Transportation Company Motor Pool. Apparently, various soldiers took portions of the scrap for their own benefit. On two occasions appellant and two companions, members of appellant's squad, transported lead to Spooner's Salvage Co. in Newport News, Virginia, and equally shared the profits thus acquired. Eight other members of the 155th Transportation Company were tried, convicted, and punished for theft of varying amounts of scrap metal belonging to the United States.[4] Olinger, however, was the only serviceman to receive a bad-conduct discharge and, also, a lengthy period of

3. Issue II (10 M.J. 251): WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN AFFIRMING APPELLANT'S APPROVED SENTENCE, WHICH INCLUDED A BAD-CONDUCT DISCHARGE, WHEN EIGHT OTHER PERSONS AT FORT EUSTIS WHO WERE TRIED BY COURT–MARTIAL FOR THE SAME OFFENSE AS APPELLANT DID NOT RECEIVE A PUNITIVE DISCHARGE.

4. The following is a summary of the trials of the other members of the 155th Transportation Company:

| Accused | C–M | Specs | $ Amt | Plea | Forum | Sentence |
|---|---|---|---|---|---|---|
| SP4 Kurzhal | GCM | 6 | $4,329 | NG | Members | Reprimand, Red to E–3, Forf $50 per month for 36 months |
| PFC Melino | GCM | 1 | $2,198 | NG | Judge | CHL for 4 months, Forf $200 per month for 4 months (auto red to E–1) |
| PFC Cody | GCM | 3 | $441 | NG | Members | CHL for 5 months, Forf $200 per month for 5 months |
| PFC Litton | SPCM | 2 | $200 | G | Judge | Red to E–1, Forf $200 per month for 5 months |
| SP4 Noble | SPCM | 2 | $200 | G | Members | Red to E–3, Forf $65 per month for 6 months, Ex Dty for 30 days |
| SP5 Henry | SPCM | 2 | $200 | G | Judge | Red to E–3, Forf to $175 per month for 6 months, Rest for 30 days |
| SGT Banks | SPCM | 2 | $150 | G | Members | Red to E–3, Forf of 14 days |
| SP4 Betts | SPCM | 2 | $200 | G | Judge | Red to E–1, HL w/o Conf for 3 months, Forf $100 per month for 3 months |

confinement. The Staff Judge Advocate's review addressed the matter of comparative sentences thusly:

> The apparent disparity between the various sentences should be considered by you in arriving at an appropriate action in this case. You are not required by law to reduce the accused's sentence because others have received lesser sentences if you believe the greater sentence is just. On the other hand, consistency of treatment is a valid and appropriate consideration.

Appellant's defense counsel in his *Goode*[5] response requested the convening authority to consider, in comparison, the sentences adjudged in the other courts-martial cited in the review. Subsequently, before the Army Court of Military Review, the appellant drew attention to the sentences adjudged in the other courts-martial, and, in the section of his brief entitled *"Sentence Appropriateness,"* he requested the lower "[c]ourt to reassess ... [appellant's] sentence by reducing the amount of confinement at hard labor to time served and by setting aside the bad-conduct discharge." The lower court, however, affirmed the approved findings and sentence.

## II

This Court has expressly refused to evaluate the appropriateness of individual court-martial sentences, particularly in those cases where the court below exercised its unique fact-finding powers under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, and determined the sentence was correct in law and fact. *United States v. Dukes*, 5 M.J. 71, 72–73 (C.M.A.1978). We recently reaffirmed this principle by stating:

> When reassessment of sentence by the Court of Military Review—or a refusal to reassess—is premised upon an *error of law*, then that error may be brought before this Court by petition or by certifi-

cate. In such an instance, we are simply freeing the Court below to exercise its sentence review powers without the restraints resulting from a misapprehension on a point of law.

*United States v. Doran*, 9 M.J. 385, 386 (C.M.A.1980) (emphasis added).

In enacting the Uniform Code of Military Justice, Congress gave the Boards of Review the power to "set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate." S.Rep.No. 486, 81st Cong. 1st Sess. 28 (1949), *reprinted in* Index and Legislative History, Uniform Code of Military Justice (1949–50). This power was granted to the Courts of Military Review in order to establish uniformity of sentences.

■ Generally, the appropriateness of an accused's sentence is to be determined without reference or comparison to sentences in other cases. *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959). The intermediate courts have recognized an exception to this general rule, however, when there are highly disparate sentences in closely related cases. *See, e.g., United States v. Kent*, 9 M.J. 836 (A.F.C.M.R.1980); *United States v. Evans*, 6 M.J. 577, 581 (A.C.M.R.1978), *pet. denied*, 6 M.J. 239 (1979); *United States v. Capps*, 1 M.J. 1184, 1187 (A.F.C.M.R.1976), *citing United States v. Perkins*, 40 C.M.R. 885 (A.C.M.R.1969), *pet. denied*, 19 U.S.C.M.A. 596 (1969); *United States v. Browne*, 37 C.M.R. 784 (CGBR 1967); *United States v. McNeece*, 30 C.M.R. 453, 454 (A.B.R.1960), *pet. denied*, 12 U.S.C.M.A. 733, 30 C.M.R. 417 (1960); and *United States v. Morris*, 27 C.M.R. 965 (A.F.B.R. 1959).

■ Both the convening authority and the court below determined that appellant's approved sentence was appropriate. There is some evidence that attention was directed not just to appellant's adjudged sentence, but also to those allegedly disparate sentences adjudged in other courts-martial

---

5. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

proceedings. The facts establish that all of these members of the company were stealing scrap metal in the attempt to make a profit on resale. A conspiracy was not charged nor do the facts show this to be a concerted effort.

As this Court has clearly stated:

We hasten to emphasize that we should not be considered as arrogating to ourselves, under the guise of a legal label, the power to determine or pass on factual questions of sentence appropriateness. Such is not our intention. Quite clearly, and not inadvisedly, Congress denied this Court such authority under the Uniform Code of Military Justice. We entertain no thought of embarking on a wholesale review of sentences. To the contrary, we here expressly recognize only that prerogative we conclude has been vested in this Court from the inception of the Uniform Code—to examine both the legality of an accused's punishment and, *as a matter of law only*, its appropriateness.

*United States v. Christopher*, 13 U.S.C.M.A. 231, 236, 32 C.M.R. 231, 236 (1962).

█ We have stated, nevertheless, that we may properly review a lower court's "reassessment of sentence . . . to prevent obvious miscarriages of justice or abuses of discretion." *United States v. Dukes, supra* at 73. The instant case, however, does not fall in either category. *Cf. United States v. Voorhees*, 4 U.S.C.M.A. 509, 531, 16 C.M.R. 83, 105 (1954) ("a sentence to dismissal and total forfeitures for . . . a 'technical' violation of a regulation is exceedingly severe").

Appellant's assertion of error here does not rise to the level of an obvious miscarriage of justice or an abuse of discretion. We conclude that a comparison of the sentences does not exceed, as Judge Ferguson expressed it, a "*relative* uniformity." His observation was:

Moreover, the apparent conflict in the desire for uniformity and individual treatment can be reconciled within the terms of . . . [Article 66(c)] of the Code,

. . . . I am certain that mathematical calculation is not the type of uniformity which Congress deemed desirable. It seems more likely to me that it was envisioned that members would utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding accused's delict, his sentence was appropriate. In short, it was hoped to attain *relative* uniformity rather than an arithmetically averaged sentence. Thus, I would conclude it to be improper for a board of review to refer solely to statistical data in determining the sentence to be approved.

*United States v. Judd*, 11 U.S.C.M.A. 164, 170, 28 C.M.R. 388, 394 (1960) (Ferguson, J., concurring in the result). While lesser sentences were given here to certain malfeasants, the facts do not demonstrate that appellant's sentence exceeded "*relative* uniformity."

The decision of the United States Army Court of Military Review is affirmed.

COOK, Judge (concurring in the result):

I agree that no legal errors were committed in the proceedings below. Accordingly, I have no occasion to review the appropriateness of appellant's sentence. *See* Article 67(d), Uniform Code of Military Justice, 10 U.S.C. § 867(d). Certainly, convening authorities and the Courts of Military Review may consider the sentences of an accused's co-actors in determining how much, if any, of the accused's sentence should be approved. *Cf. United States v. Hayes*, 589 F.2d 811, 827 (5th Cir. 1979), *cert. denied*, 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). However, it does not follow that the Government has a burden to identify and justify differences between the sentences of co-actors. I have every confidence that defense counsel will, as in the case at bar, bring to the attention of the reviewing authorities significant differences in punishments accorded co-actors.

The paramount concern in sentencing is the appropriateness of the sentence to the particular accused, according to his special

circumstances. *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 106, 27 C.M.R. 176, 180 (1959); *see United States v. Mosely*, 1 M.J. 350, 351 (C.M.A.1976). I do not regard "sentence equalization," in and of itself, to be a significant objective. *See United States v. Santiago*, 582 F.2d 1128, 1137 (7th Cir. 1978). Thus, even if co-actors' sentences are not brought to the attention of the reviewing authorities, approved sentences should not automatically be impeached thereby.

The Chief Judge's observation that the staff judge advocate failed to articulate in writing the reasons for his sentence recommendation is well taken. However, this omission was waived by civilian defense counsel's failure to object in his rebuttal to the review. *United States v. Goode*, 1 M.J. 3 (C.M.A.1975). Accordingly, I join in affirming the decision of the United States Army Court of Military Review.

EVERETT, Chief Judge (dissenting):

The Uniform Code requires that the record of a general court-martial be submitted to the staff judge advocate for "his written opinion thereon." Article 61, Uniform Code of Military Justice, 10 U.S.C. § 861. The same requirement applies to the record of a special court-martial where the sentence, as approved by the convening authority, includes a bad-conduct discharge. Article 65(b), UCMJ, 10 U.S.C. § 865(b). Paragraph 85*b* of the Manual for Courts-Martial, United States, 1969 (Revised edition), amplifies the statutory requirement by prescribing that the staff judge advocate's

> review will include a summary of the evidence in the case, his opinion as to the adequacy and weight of the evidence and the effect of any error or irregularity respecting the proceedings, and a specific recommendation as to the action to be taken. *Reasons for both the opinion and the recommendation will be stated.*

(Emphasis added).

In the case at hand, the staff judge advocate provided tabular information as to the sentences adjudged in related cases. Also, he recommended that the sentence adjudged here be approved by the convening authority. Unfortunately, he failed to relate these two elements of the review and to explain why—despite the much more lenient sentences imposed on the accused in related cases—Olinger should not receive sentence relief. There are many reasons which might be advanced to sustain the recommendation; we heard several of them during oral argument by appellate government counsel. However, the Manual requires that the staff judge advocate present his "[r]easons" for his recommendation. *Cf. United States v. Kent*, 9 M.J. 836 (A.F.C.M. R.1980).

I am realistic enough to recognize that convening authorities in many instances do not have time available to read all the details of a lengthy staff judge advocate's review; probably a convening authority often relies chiefly on an oral summary of the review by his staff judge advocate. However, the Manual requirements serve to assure that the staff judge advocate—or typically a subordinate in his office who drafts the review for the staff judge advocate—has thought through the issues raised in a case. If the review contains a reason for a legal conclusion or for a sentence recommendation, at least there is an assurance that someone in the staff judge advocate's office has gone through the process of reasoning why that particular conclusion should be reached or that recommendation should be made. Hopefully, if someone has thought seriously about the advice to be given, the likelihood is increased that the convening authority will receive sound, rather than faulty, advice—whether or not the convening authority chooses to go into the specifics of the review. Since I conclude that in the case at hand the intent of the Manual was not complied with, I would send the case back for the completion of an adequate review.