UNITED STATES, Appellee

v.

Adam J. BROCK, Airman Basic
U.S. Air Force, Appellant.

No. 96–0673
Crim.App. No. 31301

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 7, 1996.

Decided Feb. 19, 1997.

For Appellant: *Colonel Jay L. Cohen* (argued); *Colonel David W. Madsen* and *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Captain Libby A. Brown* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was tried by a judge sitting alone at Royal Air Force Chicksands, United Kingdom. Pursuant to his pleas, he was convicted of wrongful use of lysergic acid diethylamide (LSD) "on divers occasions between on or about 20 February 1992 and on or about 7 December 1993," wrongful use of marihuana "on divers occasions between on or about 20 February 1992 and on or about 7 December 1993," wrongful distribution of marihuana "on divers occasions between on

or about 16 October 1993 and on or about 7 December 1993," and wrongful distribution of "some amount of amphetamine" on or about October 28, 1993, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for 2 years and 6 months, and total forfeitures. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. We granted review of the following issues:

I

WHETHER THE LOWER COURT ERRED BY HOLDING THAT VACATION OF APPELLANT'S SUSPENDED PUNISHMENT UNDER ARTICLE 15 FOR SOME OF THE SAME OFFENSES FOR WHICH HE WAS COURT-MARTIALED WAS NOT PUNISHMENT UNDER ARTICLE 15 THAT ENTITLED APPELLANT TO RELIEF.

II

WHETHER THE LOWER COURT'S DETERMINATION THAT APPELLANT'S SENTENCE WAS NOT INAPPROPRIATELY SEVERE IS ERRONEOUS IN LIGHT OF:

A. THAT COURT'S FAILURE TO FOLLOW THE PRECEDENT OF THIS COURT AND ITS OWN PRECEDENT BY REFUSING TO ADMIT EVIDENCE OF THE SENTENCE OF A CO-ACTOR FOR PURPOSES OF SENTENCE COMPARISON;

and

B. THAT COURT'S REJECTION OF APPELLANT'S SENTENCE COMPARISON ARGUMENT ON THE BASIS THAT APPELLANT HAD NOT INTRODUCED EVIDENCE OF THE CO-ACTOR'S SENTENCE, EVEN THOUGH THAT COURT REFUSED TO ADMIT SUCH EVIDENCE.

As to Issue I, we hold adversely to appellant based upon *United States v. Zamberlan*, 45 MJ 491 (1997). As to Issue II, we hold that the Court of Criminal Appeals erred in refusing to admit the evidence concerning Airman First Class James Thomas' [hereafter Thomas] trial.

FACTS

Appellant made an unsworn statement that his life went into "a tailspin" after Thomas introduced him to drugs. He claimed that Thomas made the use of drugs sound exciting and interesting and that drug use helped appellant gain acceptance by other people.

As a part of the guilty-plea procedures, appellant entered into a Stipulation of Fact which is attached hereto as the Appendix. Appellant's involvement with Thomas is set forth in that document.

While appellant's case was pending before the Court of Criminal Appeals, he moved for that court to take judicial notice of a map of Bedford County in England and the promulgating order of the court-martial of Thomas, "a co-actor in a number of appellant's offenses and the mentor of appellant's involvement in illegal drugs in the Air Force." Thomas was convicted of various offenses at Royal Air Force Chicksands, United Kingdom, committed between on or about October 15, 1992, and on or about December 7, 1993. The defense also sought to introduce Thomas' service record. The court below denied the defense motion to admit the documents.

Appellant argues that Thomas' sentence should be considered when determining an appropriate sentence for appellant. Thomas was convicted of possessing and distributing LSD, and possessing, using, and distributing marihuana. Thomas was sentenced to a bad-conduct discharge, 13 months' confinement, and forfeiture of $500 pay per month for 13 months. Appellant argues that it is "crystal clear" that a "closely-related" case must be

considered when determining sentence appropriateness, citing *United States v. Ballard*, 20 MJ 282 (CMA 1985), and *United States v. Olinger*, 12 MJ 458 (CMA 1982).

The court below stated, "We have no evidence before us on which to make a comparison of sentences between appellant and Airman Thomas.... We do not know whether the two cases are closely related, or whether the sentences are highly disparate." Unpub. op. at 4, 1996 WL 76153.

## DISCUSSION

Depending on the sentence, there are three levels of appellate review: the Court of Criminal Appeals, pursuant to Article 66(c), UCMJ, 10 USC § 866(c) (1994); this Court, pursuant to Article 67, UCMJ, 10 USC § 867 (1994); and the Supreme Court, pursuant to Article 67a, UCMJ, 10 USC § 867a. An additional level of review is by the convening authority. *See United States v. Mamaluy*, 10 USCMA 102, 27 CMR 176 (1959). The latter review is important because the convening authority has the discretion to set aside the findings or sentence. Art. 60(c)(2) and (3), UCMJ, 10 USC § 860(c)(2) and (3) (1983).

■ This Court does not have the authority to pass on factual questions concerning the appropriateness of a sentence. *See Olinger*, 12 MJ at 461. However, we may examine the Court of Criminal Appeals' decision on sentence appropriateness for an abuse of discretion. *United States v. Jones*, 39 MJ 315, 316–17 (CMA 1994). Review by the Court of Criminal Appeals is important because that court is one of the few appellate courts in the United States with factfinding powers. It has "*carte blanche* to do justice." *United States v. Claxton*, 32 MJ 159, 162 (CMA 1991). This authority includes making findings as to whether the cases are closely

related and modifying the sentences of co-conspirators or aiders and abettors. *See United States v. Smith*, 44 MJ 720, 723–25 (Army Ct.Crim.App.1996); *United States v. Kelly*, 40 MJ 558, 570–71 (NMCMR 1994).

In *United States v. Ballard*, 20 MJ 282, 283 (1985), this Court quoted the lower court in that case as follows:

> It is well settled that, except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases, such as those of accomplices, sentence appropriateness should be determined without reference to or comparison with the sentences received by other offenders.

■ In this case, however, the door was closed to appellant from the start because the court below refused to admit the evidence relating to Thomas' sentence even though there was evidence in the record of appellant's involvement with Thomas. This Court does not have factfinding powers, but we do have the power to determine, as a matter of law, whether the court below was obligated to consider evidence relevant to the exercise of its factfinding powers. Under the circumstances of this case, we hold that the court below erred in not admitting this evidence in order to consider (1) whether appellant's case was closely related to Thomas' and, if so, (2) whether the sentences were highly disparate.

The decision of the Air Force Court of Criminal Appeals as to sentence is reversed. The sentence is set aside, and the record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for further review.

Chief Judge COX and Judges GIERKE and EFFRON concur.

**14**

## A P P E N D I X

AIR FORCE LEGAL SERVICES AGENCY
EUROPEAN CIRCUIT

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | STIPULATION OF |
| | ) | FACT |
| AB ADAM J. BROCK | ) | |
| 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 | ) | |
| 450TH INTELLIGENCE SQUADRON | ) | |
| RAF CHICKSANDS, ENGLAND | ) | |

It is hereby stipulated and agreed by and between the trial counsel and defense counsel, with the express consent of the accused, that:

The accused enlisted in the U.S. Air Force on 19 July, 1991, and has remained on continuous active duty since that time. The accused attended basic training at Lackland AFB, Texas, and technical school at Goodfellow AFB, Texas. The accused arrived at RAF Chicksands, Bedfordshire, England, his first duty assignment on 19 July 1991. The accused is not married.
~~Pay 20 Feb 92~~

Between on or about 20 February 1992 and on or about 7 December 1993, the accused used lysergic acid diethylamide (LSD) between 5 and 15 times. The accused and A1C James Thomas purchased 20 hits (individual portions) of LSD at a cost of £2.50 each. The accused used LSD at or near Bedfordshire, England; both on and off base. On at least two occasions, the accused used LSD with other military members in a dormitory room, Bldg. 411 on RAF Chicksands. The accused used LSD with A1C James Thomas and A1C Brian Pennell. On another occasion, the accused used LSD at 16 Jasmine Close, Bedford, Bedfordshire, England, with A1C James Thomas, A1C Geoffrey Riddle, and two British nationals: Belinda Hughes and Cheryl B. Glover. The accused used LSD because he enjoyed the "trips" and because it made him feel really good. LSD is a controlled substance included in the Controlled Substances Act of 1970 (21 U.S.C. 812). On each occasion the accused used LSD, he knew the contraband nature of LSD and that LSD use was wrongful. The accused had no legal justification or authorization for using LSD.

Between on or about 16 October 1993 and one or about 7 December 1993, on several occasions, the accused wrongfully distributed marijuana or marijuana in hashish form to others at or near Bedfordshire, England. On some of these occasions, the accused would share marijuana or hashish that he had for his own use with others. On one occasion during the charged period, the accused purchased one ounce of marijuana for £100.00 and one ounce of hashish for £90.00. The accused then sold the marijuana

Prosecution Exhibit _1_ for Identification
Off: Pg _16_ Adm. Pg 20 unit

and hashish resin to SA Patrick Johnson for £340.00. At the time of the sale, the accused believed SA Johnson was a British national. The accused conducted the transaction solely for profit. The marijuana the accused sold to SA Johnson is Prosecution Exhibit 5. The hashish the accused sold to SA Johnson is Prosecution Exhibit 6. Prosecution Exhibit 7 is the lab report from the United States Army Criminal Investigation Laboratory (USACIL) Frankfurt, Germany, confirming that Prosecution Exhibit 5 is marijuana and that Prosecution Exhibit 6 is hashish. On another occasion during the charged period, the accused accepted £30.00 from A1C David Heller for which A1C Heller received two bags, each bag containing one eighth of an ounce of hashish resin. Prosecution Exhibit 2 is this hashish. Prosecution Exhibit 7 is the lab report from USACIL confirming that Prosecution Exhibit 2 is hashish. Marijuana and hashish are controlled substances included in the Controlled Substances Act of 1970 (21 U.S.C. 812). On each occasion the accused distributed marijuana and/or hashish, he knew the contraband nature of the marijuana or hashish and that distribution of marijuana or hashish was wrongful. The accused had no legal justification or authorization for distributing marijuana or hashish.

Between on or about 20 February 1992 and on or about 7 December 1993, on numerous occasions, the accused used marijuana and/or marijuana in hashish form. The accused used marijuana and/or hashish at or near Bedfordshire, England, both on and off base. On base, the accused used marijuana and/or hashish in a dormitory room on RAF Chicksands. The accused used marijuana and hashish because he enjoyed the high and the altered state of mind it gave him. The accused would ingest marijuana and/or hashish by smoking, using a cigarette or bong. The accused would also bake marijuana into brownies, then eat the brownies. On one occasion, the accused and A1C James Thomas made "double fudge, tear it up, buckle down brownies" by mixing a quarter of an ounce of marijuana in the brownie mix. The accused and A1C James Thomas made these brownies at the home of a British national at or near Bedfordshire, England. The accused and A1C James Thomas then ate these marijuana brownies. The accused smoked marijuana and/or hashish at least once a week during the charged period. For one eight day period during the charged period, the accused used marijuana and/or hashish every day for eight straight days. On 20 October 1993, the accused was randomly selected to provide a urine sample as part of RAF Chicksands urinalysis program. The accused's urine sample was properly collected, secured, and shipped to the Air Force Drug Testing Lab (AFDTL) at Brooks AFB, Texas, where it was received untainted. At AFDTL, the accused's urine sample was properly tested by Radioimmunoassay as well as gas chromotography/mass spectrometry (GC/MS) and confirmed as positive for 11-nor-delta-9-tetrahydrocannabinol-4-carboxylic

acid (THC). These tests of the accused's urine at AFDTL accurately reported the presence of THC in the accused's urine. On 7 December 1993, the accused consented to provide a urine sample. This sample was properly collected, secured, and shipped to the Armed Forces Institute of Pathology (AFIP) Washington D.C., where it was received untainted. At AFIP, the accused's urine sample was properly tested by fluorescence polarization immunoassay as well as GC/MS and confirmed as positive for THC. These tests of the accused's urine at AFIP accurately reported the presence of THC in the accused's urine. On each occasion the accused used marijuana and/or hashish, the accused knew the contraband nature of the marijuana or hashish and that use of marijuana or hashish was wrongful. The accused had no legal justification or authorization for using marijuana and/or hashish.

On or about 28 October 1993, at or near Bedfordshire, England, the accused wrongfully distributed approximately 1.5 grams of amphetamine to A1C David Heller. On 27 October 1993, A1C Heller gave the accused £65.00 to purchase drugs. The next day, the accused gave A1C Heller a film canister that contained approximately 1.5 grams of amphetamine and one small cube of hashish. The approximately 1.5 grams of amphetamine that the accused sold to A1C Heller is Prosecution Exhibit 3. Prosecution Exhibit 4 is the cube of hashish that accused sold to A1C Heller. Prosecution Exhibit 7 is the lab report from USACIL confirming that Prosecution Exhibit 3 is amphetamine and that Prosecution Exhibit 4 is hashish. Amphetamine is a controlled substance included in the Controlled Substances Act of 1970 (21 U.S.C. 812). When the accused distributed amphetamine to A1C Heller, the accused knew the contraband nature of amphetamine and that amphetamine distribution was wrongful. The accused had no legal justification or authorization for distributing amphetamine.

After he was apprehended by special agents of OSI on 7 December 1993, the accused knowingly, intelligently and consciously waived his UCMJ Article 31 rights and provided a written confession. He provided information which was instrumental in the apprehension of five other Air Force members who were using drugs and after receiving testimonial immunity, testified in the prosecution of one Air Force member.

On 13 December 1993, the accused was informed by A1C David Heller of a threat. A1C Heller had been told there were people looking for the accused for the purpose of terminating the accused's life. This was due to the information the accused had given to the OSI. The existence of the threat or that it had actually been made was never verified.

GARY L. CONING, Major, USAF
Trial Counsel

28 Jan 94
Date

PETER J. RICHARDS, Captain, USAF
Defense Counsel

28 JUNE 94
Date

ADAM J. BROCK, AB, USAF
Accused

28 JUN 94
Date

SULLIVAN, Judge (concurring in the result):

Our case law makes clear that a Court of Criminal Appeals need not look at sentences in other court-martial cases unless those cases are closely related. *United States v. Henry,* 42 MJ 231, 234 (1995); *United States v. Ballard,* 20 MJ 282, 286 (CMA 1985); *United States v. Olinger,* 12 MJ 458 (CMA 1982). Here, the record of trial established at least a *prima facie* basis for concluding that Airman First Class Thomas' case was closely related to appellant's. ("James Thomas introduced me to drugs, and my life has been in a tailspin ever since. He had a kind of magnetic attraction that gave him real persuasive power.... Still, I know that if it hadn't been for Airman Thomas, I would not be here today.")

In *Henry, supra* at 234, we noted that the staff judge advocate was allowed to submit abstracts of related court-martial cases to rebut a convicted servicemember's sentence disparity argument. In view of the broad language of Article 38(c), UCMJ, 10 USC § 838(c), and our prior case law, I do not understand the lower court's decision denying the defense the right to submit such related case information to raise this type of claim. *See also* Art. 46, UCMJ, 10 USC § 846 (equal opportunity to obtain evidence). No reason for such preclusive action is provided by the court below. Accordingly, I join the majority in remanding this case to the Court of Criminal Appeals to consider the defense-proffered materials and decide the issue of sentence disparity or order a new recommendation and action on sentence.