*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Sean M. SWISHER, Lance Corporal
United States Marine Corps, Appellant

**No. 24-0011**
Crim. App. No. 202100311

Argued April 17, 2024—Decided July 11, 2024

Military Judge: Eric A. Catto

For Appellant: *S. Marshall Griffin Jr.*, Esq. (argued); *Lieutenant Colonel Matthew E. Neely*, USMC (on brief).

For Appellee: *Major Candace G. White*, USMC (argued); *Colonel Joseph M. Jennings*, USMC, *Lieutenant Commander James P. Wu Zhu*, JAGC, USN, and *Brian K. Keller*, Esq. (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge MAGGS, Judge HARDY, and Judge JOHNSON joined. Judge SPARKS filed a separate dissenting opinion.

————————

Chief Judge OHLSON delivered the opinion of the Court.

We granted review in this case to determine whether the United States Navy-Marine Corps Court of Criminal Appeals (CCA) abused its discretion when performing its sentence appropriateness review under Article 66(d)(1), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d)(1) (2018). Specifically, we must determine whether the lower court misapprehended the law when, in the course of conducting a sentence appropriateness review, it "decline[d] to compare" a civilian coactor's sentence with Appellant's sentence. *United States v. Swisher*, No. NMCCA 202100311, 2023 CCA LEXIS 339, at *25-26, 2023 WL 5274010, at *9 (N-M. Ct. Crim. App. Aug. 16, 2023) (en banc) (unpublished). We hold that the CCA did abuse its discretion because it did not decide whether the cases were closely related as required under applicable precedent. Accordingly, the CCA decision is reversed as to sentence and the case is remanded for a new sentence appropriateness review.

## I. Background

On December 1, 2019, in Myrtle Beach, South Carolina, Appellant and a civilian, Mr. Simmons, sexually assaulted the same young woman at the same time and in the same manner. Ultimately, the perpetrators were held criminally responsible for their misconduct—Mr. Simmons in state court and Appellant in the military justice system.

Mr. Simmons agreed to plead guilty in South Carolina state court to criminal sexual conduct in the third degree in exchange for a recommended sentence of probation with sex offender registration.[1] Following this plea, the state

---

[1] Criminal sexual conduct in the third degree is a felony with a maximum punishment of ten years, and it is defined as follows:

> (1) A person is guilty of criminal sexual conduct in the third degree if the actor engages in sexual battery with the victim and if any one or more of the following circumstances are proven:

court sentenced Mr. Simmons to a five-year suspended prison sentence and probation for three years.

Appellant, in contrast, contested his charges of one specification of attempted sexual assault, one specification of wrongful use of cocaine, two specifications of sexual assault, and two specifications of aiding and abetting sexual assault, in violation of Articles 80, 112a, and 120, UCMJ, 10 U.S.C. §§ 880, 912a, 920 (2018).[2] At a general court-martial with enlisted representation, Mr. Simmons testified for the Government against Appellant, who was convicted of all specifications except for the aiding and abetting sexual assault specifications. After electing military judge sentencing, Appellant received a sentence of a dishonorable discharge, confinement for fifty-four months, and reduction to E-1.[3] The convening authority took no action on the sentence and the military judge then entered judgment.

---

. . . .

> (b) The actor knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless and aggravated force or aggravated coercion was not used to accomplish sexual battery.

S.C. Code Ann. § 16-3-654(1)(b) (2015). A sexual battery means, in relevant part, "sexual intercourse, cunnilingus, [or] fellatio." S.C. Code Ann. § 16-3-651(h) (2015).

[2] The Article 120(b)(3)(A) offense of sexual assault occurs when a servicemember "commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to . . . impairment by any . . . intoxicant . . . and that condition is known or reasonably should be known by the person." The maximum punishment for this offense is "[f]orfeiture of all pay and allowances . . . and confinement for 30 years" and includes a mandatory minimum of a dishonorable discharge. *Manual for Courts-Martial, United States* pt. IV, para. 60.d.(2) (2019 ed.).

[3] The military judge merged the Article 80 and the Article 120 charges because of unreasonable multiplication of charges, and for this merged offense, the military judge sentenced Appellant to fifty-four months of confinement. For the wrongful use of cocaine offense, the military judge sentenced Appellant to two

On appeal, the CCA initially affirmed the findings and sentence. *See Swisher*, 2023 CCA LEXIS 339, at \*2, 2023 WL 5274010, at \*1. However, the CCA subsequently granted Appellant's motion for en banc reconsideration and withdrew its prior decision. *See id.* at \*3, 2023 WL 5274010, at \*1. Upon en banc review, the CCA set aside and dismissed with prejudice the attempted sexual assault specification for failure to state an offense, affirmed the remaining findings, and affirmed the sentence after reassessment. *Id.* at \*26-27, 2023 WL 5274010, at \*10.

When conducting its appellate review, the CCA rejected Appellant's argument that his sentence was "highly disparate when compared to the sentence awarded to his alleged co-actor." Brief for Appellant at 97, *United States v. Swisher*, No. NMCCA 202100311 (N-M. Ct. Crim. App. May 11, 2022). Specifically, the lower court stated: "We decline to compare Mr. [Simmons's] case with Appellant's sentence for an analysis of appropriateness" because "[Mr. Simmons's] sentence was for different crimes and was adjudicated by a civilian jurisdiction." *Swisher*, 2023 CCA LEXIS 339, at \*25-26, 2023 WL 5274010, at \*9. The CCA further stated that it was "unaware of any precedent that requires us to find parity between a military court-martial sentence and a sentence awarded by a state or local jurisdiction." *Id.* at \*26, 2023 WL 5274010, at \*9. In a footnote, the CCA explained:

> In his motion for en banc reconsideration, Appellant takes issue with this conclusion and cites *United States v. Sothen*, 54 M.J. 294 (C.A.A.F. 2001) and *United States v. Behunin*, 83 M.J. 158 (C.A.A.F. 2023) for the proposition that we are required to compare a court-martial sentence with a sentence awarded by a state or local jurisdiction in closely related cases. . . . We disagree. While our Court in *Sothen* chose to compare appellant's court-martial conviction with his co-conspirator's state court conviction, there was no requirement

months of confinement. The military judge directed that these sentences of confinement run concurrently.

to do so. Appellant's reliance on dicta in *Sothen*
and a single footnote in *Behunin*, 83 M.J. at 158
n.2 (which in turn cites back to *Sothen*) does not
support his argument.

*Id.* at \*26 n.73, 2023 WL 5274010, at \*9 n.73.

We then granted review of the following issue:

> Did the lower court err by applying the wrong
> legal standard to its sentence appropriateness
> analysis?

*United States v. Swisher*, 84 M.J. 169 (C.A.A.F. 2023) (order granting review). As will be explained, we answer the granted issue in the affirmative and remand for further proceedings.

## II. Standard of Review

" 'Our review of decisions by the Courts of Criminal Appeals on issues of sentence appropriateness is limited to the narrow question of whether there has been an obvious miscarriage[] of justice or abuse[] of discretion.' " *United States v. Behunin*, 83 M.J. 158, 161 (C.A.A.F. 2023) (alterations in original) (internal quotation marks omitted) (quoting *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)). There is an abuse of discretion, in relevant part, when a "court's decision is influenced by an erroneous view of the law." *Id.* (internal quotation marks omitted) (quoting *United States v. Ayala*, 81 M.J. 25, 27-28 (C.A.A.F. 2021)).

## III. Analysis

Article 66(d)(1) provides, in part, that CCAs "may affirm only . . . the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved." This language empowers the CCAs to review cases for sentence appropriateness. *See Sothen*, 54 M.J. at 296. "[A CCA's] power to review a case for sentence appropriateness . . . includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *Id.*

The CCAs typically have "discretion to consider and compare" other "sentences when [they are] reviewing a

case for sentence appropriateness and relative uniformity." *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001). As we have stated, "generally speaking 'neither Article 66[(d)(1)] nor our precedents requires [the CCAs] to engage in sentence comparison with specific cases.'" *Behunin*, 83 M.J. at 161-62 (alterations in original) (quoting *United States v. Noble*, 50 M.J. 293, 294 (C.A.A.F. 1999)). Importantly, however, "this general rule is subject to one exception—the CCAs 'are *required* to engage in sentence comparison . . . in those *rare instances* in which sentence appropriateness can be fairly determined *only* by reference to disparate sentences adjudged in closely related cases.'" *Id.* at 162 (alteration in original) (quoting *Sothen*, 54 M.J. at 296).[4]

It is in this context that our Court has spelled out the analytical approach a CCA must employ when confronted with a claim that the sentences in two cases are disparate. As we held in *United States v. Lacy*:

> At a Court of Criminal Appeals, an appellant bears the burden of demonstrating that any cited cases are "closely related" to his or her case and that the sentences are "highly disparate." If the appellant meets that burden, or if the court raises the issue on its own motion, then the Government must show that there is a rational basis for the disparity.

50 M.J. 286, 288 (C.A.A.F. 1999). As can be seen then, in a case such as the one presented here, our precedent requires a CCA to decide at the outset of its analysis whether an appellant has borne the burden of showing that the appellant's case and another case are "closely related."[5] And yet, the CCA did not do so here.

---

[4] Neither party has challenged this holding as articulated in *Behunin* and *Sothen*, and thus it remains binding precedent.

[5] If the cases *are* closely related, the CCA must then proceed to determine whether the appellant has shown that the sentences imposed in each case are highly disparate, and if so,

In declining to compare the two cases, the lower court cited the fact that Mr. Simmons's sentence was "adjudicated by a civilian jurisdiction." *Swisher*, 2023 CCA LEXIS 339, at *26, 2023 WL 5274010, at *9. However, the mere fact that the sentence in Appellant's case was the product of a court-martial proceeding and the sentence in Mr. Simmons's case was the product of a civilian criminal proceeding is not necessarily dispositive of the issue of whether the two cases are "closely related." We have made it clear that civilian sentences may serve as a basis for sentence comparison. *Sothen*, 54 M.J. at 296-97. (Nothing "preclude[s] consideration of cases involving military and civilian co-actors." *Id.* at 297.[6]) Thus, when a CCA confronts the issue of whether the sentence in a court-martial case is inappropriate in the light of a sentence imposed in a civilian case, that court must conduct an initial assessment of whether the cases are closely related. Therefore, because the CCA did not decide whether Appellant's case and Mr. Simmons's case were closely related, we conclude that the lower court abused its discretion because its decision was "influenced by an erroneous view of the law." *Ayala*, 81 M.J. at 27-28 (citation omitted) (internal quotation marks omitted).

Having determined that the CCA abused its discretion, we now must decide what remedy should be afforded Appellant. For the reasons stated below, we conclude that the correct approach is for us to remand this case to the lower court so that it may perform another sentence appropriateness review.

First, under similar circumstances, we remanded a case in the past. *See United States v. Baier*, 60 M.J. 382, 385 (C.A.A.F. 2005) (remanding case for a new Article 66

---

whether there was a rational basis for this disparity. *Lacy*, 50 M.J. at 288.

[6] Nevertheless, the fact that a closely related case involved a civilian conviction and sentence rather than a military conviction and sentence may be weighed when determining whether the sentences were truly disparate and/or whether there was a rational basis for the disparity.

sentence appropriateness review "using the correct standard"). Second, the authority to conduct a sentence appropriateness review lies squarely with the CCAs rather than with this Court. Third, both parties agree that a remand is the appropriate remedy. At oral argument Appellant asked for this Court "to remand [the case] back to the Navy-Marine Corps Court of Criminal Appeals for consideration." Oral Argument at 8:29-35, *United States v. Swisher* (C.A.A.F. Apr. 17, 2024) (No. 24-0011). Similarly, the Government's brief states, "If this Court finds that the lower courts have no discretion to decline to determine if a civilian conviction is 'closely related,' it should remand to the lower court for a new sentence appropriateness analysis." Brief for Appellee at 25, *United States v. Swisher*, No. 24-0011 (C.A.A.F. Mar. 18, 2024); *see also* Oral Argument at 30:50-31:00 (stating that if this Court disagrees that the case should be affirmed, "the appropriate remedy would be to remand the case for the CCA to exercise its Article 66 discretionary review"). In light of these points, we deem a remand of this case to be the proper result.[7]

## IV. Conclusion

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed as to findings and set aside as to sentence. The record is returned to the Judge

---

[7] In remanding this case, we are mindful of the fact that, as noted by Appellant: (a) we have held that "cases are closely related if they fit within at least one of . . . three categories," and one of those categories is when the individuals were " 'coactors involved in a common crime,' " *Behunin*, 83 M.J. at 162 (quoting *Lacy*, 50 M.J. at 288); and (b) in its brief before this Court, the Government concedes that "Appellant and Mr. Simmons [were] co-actors here." Brief for Appellee at 23. However, we underscore that CCAs have "broad discretion" to decide whether individuals are coactors, *Behunin*, 83 M.J. at 162, that courts of appeal are not compelled to accede to the concessions of a party, *United States v. Budka*, 74 M.J. 219, 220 (C.A.A.F. 2015) (summary disposition), and that such a determination is necessarily fact driven. Under these circumstances, we conclude that it is inappropriate for us to evaluate in the first instance the question of whether the two cases are closely related.

Advocate General of the Navy for remand to the lower court for a new sentence appropriateness review consistent with this opinion.

Judge SPARKS, dissenting.

I write separately because I respectfully disagree with the majority's conclusion that a Court of Criminal Appeals (CCA) is required to conduct a formal assessment of whether cases are closely related when a conviction in a civilian court is involved.

This Court has repeatedly recognized that the CCAs were granted their unusual sentence appropriateness powers to facilitate uniformity of sentencing within the unique structure of the military justice system.

> The military justice system is highly decentralized. Military commanders stationed at diverse locations throughout the world have broad discretion to decide whether a case should be disposed of through administrative, nonjudicial, or court-martial channels. If the case results in a finding of guilty, a court-martial has discretion to impose any authorized punishment that is below the maximum for the offense. After trial, the commander who convened the court-martial has virtually unfettered discretion, as a matter of command prerogative, to modify the sentence in whole or in part, so long as the severity is not increased.

> Congress, recognizing that the decentralized exercise of such broad discretion is likely to produce disparate results, has provided the Courts of Criminal Appeals not only with the highly discretionary power to determine whether a sentence is correct in law and fact, but also with the highly discretionary power to determine whether a sentence "should be approved." . . .

> Under Article 66(c), Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to

>> utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding [the] accused's delict, his sentence was appropriate. In short, it was hoped to attain *relative* uniformity rather than an arithmetically averaged sentence.

*United States v. Lacy*, 50 M.J. 286, 287 (C.A.A.F. 1999) (alteration in original) (citations omitted); *see also United States v. Boone*, 49 M.J. 187, 191-92 (C.A.A.F. 1998) (noting that, after World War II, when Congress decided "to improve the administration of justice in the Armed Forces of the United States," it recognized a need to establish appellate courts that "would have the high responsibility of ensuring uniformity and evenhandedness, values that could not be assured if final decision making were left at the local command level"); *United States v. Henry*, 42 M.J. 231, 234 (C.A.A.F. 1995) (agreeing with the appellant's assertion that, when Congress enacted Article 66, Uniform Code of Military Justice (UCMJ), it intended to establish uniformity of sentencing throughout the armed forces. "The Board [of Review] may set aside, on the basis of the record, any part of a sentence either because it is illegal or because it is inappropriate. It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces." (alteration in original) (internal quotation marks omitted) (quoting H.R. Rep. No. 491 (1949)); *United States v. Olinger*, 12 M.J. 458, 460 (C.M.A. 1982) (recognizing that, in enacting the UCMJ, "Congress gave the Boards of Review the power to 'set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate,'" and that this power was granted in order to establish uniformity of sentences (citation omitted)).

This Court has also emphasized that sentence appropriateness review at the appellate level is unique to the military justice system. There simply is no civilian analog. "Article 66(c) of the UCMJ, 10 U.S.C. § 866, provides the Courts of Criminal Appeals with broad discretion to determine whether a sentence 'should be approved,' a power that has no direct parallel in the federal civilian sector." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001). "The power to determine whether a sentence should be approved has no direct parallel in the federal civilian sector, which relies on sentencing guidelines." *Lacy*, 50 M.J. at 287-88. The overarching goal was to ensure that military members were treated similarly to one another, not similarly to their civilian

counterparts. As recognized by the Supreme Court in *Parker v. Levy*, "[t]he differences . . . first between the military community and the civilian community, and second between military law and civilian law, continue in the present day under the Uniform Code of Military Justice. That Code cannot be equated to a civilian criminal code." 417 U.S. 733, 749 (1974).

Up to now, there has been no requirement that CCAs compare military and civilian sentences and, given the overarching purpose of the sentence appropriateness review power, I see no reason to impose such a requirement now.

In general, "neither Article 66[(d)(1)] nor our precedents requires [the CCAs] to engage in a sentence comparison with specific cases." *United States v. Behunin*, 83 M.J. 158, 161-62 (C.A.A.F. 2023) (alterations in original) (internal quotation marks omitted) (quoting *United States v. Noble*, 50 M.J. 293, 294 (C.A.A.F. 1999)). The lower courts are only required to conduct a sentence comparison between specific cases "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Lacy*, 50 M.J. at 288 (internal quotation marks omitted) (quoting *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A. 1985)). Mr. Simmons was tried and convicted within the civilian court system of the state of South Carolina. Nothing in our case law or Article 66, UCMJ, at all suggests that the lower courts need to ensure that there is uniformity in sentencing between the military and that state, or any state. The two systems and societies are too different to directly compare. Civilian prosecutors pursue different interests than military commanders. A civilian prosecutor may choose to dispose of a case for any number of reasons, not the least of which might be mere efficiency. Most notably, there is no parallel in the civilian courts to the commander's need to preserve good order and discipline.

In *Sothen*, this Court determined that Article 66, UCMJ, "does not preclude consideration of cases involving military and civilian co-actors." 54 M.J. at 297. However, not precluding, or preventing, review is not the same thing

as requiring it. *Sothen* does not establish that a CCA must conduct a comparison between military and civilian cases when undertaking a sentence appropriateness review, even if they involve the same crime. Our existing law is clear. The lower courts may compare the sentences of civilian and military defendants if they choose to, but they are not required to do so.

In addition, I question the premise that the lower courts are obligated to compare military to civilian sentences simply because the defendants were coactors. *Lacy* offers three examples of potentially closely related cases, "*e.g.*, coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." 50 M.J. at 288. However, the language used in the opinion indicates these were not meant as strict categories but rather circumstances that *could* result in closely related cases. The abbreviation "e.g." means "for example." *Merriam-Webster Dictionary,* https://www.meriam-webster.com/dictionary/e.g. (last visited July 2, 2024). The phrasing used in the third example also suggests the list only contemplated situations in which both cases involved servicemembers—"some *other* direct nexus between servicemembers"—and not a comparison with civilian defendants; *see also Behunin*, 83 M.J. at 162 (interpreting the first example in *Lacy* as requiring that "the *servicemembers* were coactors involved in a common crime" (emphasis added) (citation omitted) (internal quotation marks omitted)).

Sentence appropriateness review is a power exclusive to the CCAs and this Court should not intervene unless absolutely necessary. Hence the high standard of review, limiting this Court to preventing "obvious miscarriages of justice or abuses of discretion." *Lacy*, 50 M.J. at 288 (internal quotation marks omitted) (quoting *United States v. Dukes*, 5 M.J. 71, 73 (C.M.A. 1978)). In addition, in *Lacy*, this Court explicitly stated that "we have not required the courts below to articulate their reasons" for determinations, including whether cases are comparable, "and do not do so today." *Id.* Here, the lower court was not completely silent as to why it chose not to conduct a formal

sentence appropriateness review. It noted that Mr. Simmons's "sentence was for different crimes and was adjudicated by a civilian jurisdiction." *United States v. Swisher*, No. NMCCA 202100311, 2023 CCA LEXIS 339, at *26, 2023 WL 5274010, at *9 (N-M. Ct. Crim. App. Aug. 16, 2023) (en banc) (unpublished). The CCA's informal recognition of these key distinguishing factors was not an obvious miscarriage of justice or abuse of discretion. Neither our case law nor the original intent behind sentence appropriateness review require any sentence comparison when a civilian defendant is involved. Given the historical foundations of the lower courts' sentence appropriateness powers, I am hard pressed to understand how requiring them to engage in a formal, closely related analysis in this context furthers the goal of evenhandedness and sentence consistency within the military justice system. Therefore, I respectfully dissent.