# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––––

**No. ACM S32684**

––––––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Mellodee L. BEHUNIN**
Airman First Class (E-3), U.S. Air Force, *Appellant*

––––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 18 July 2022

––––––––––––––––––––

*Military Judge:* Shadd R. Kidd.

*Sentence:* Sentence adjudged on 14 January 2021 by SpCM convened at Dyess Air Force Base, Texas. Sentence entered by military judge on 30 January 2021: Bad-conduct discharge, confinement for 110 days, forfeiture of $1,100.00 pay per month for 4 months, and reduction to E-1.

*For Appellant:* Major Matthew L. Blyth, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Brian E. Flanagan, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges*.

Senior Judge POSCH delivered the opinion of the court, in which Judge RICHARDSON and Judge CADOTTE joined.

––––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––––––––

POSCH, Senior Judge:

A special court-martial composed of a military judge sitting alone convicted Appellant, pursuant to her pleas, of one specification each of fraudulent enlistment, making a false official statement, wrongful use of cocaine, and wrongful use of lysergic acid diethylamide (LSD) in violation of Articles 83, 107, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 883, 907, and 912a.[1] Appellant entered pleas in accordance with a plea agreement she made with the convening authority who referred the charges and specifications to trial by court-martial.

At Appellant's court-martial, the military judge accepted her pleas and announced findings of guilty to the charged offenses. Appellant was sentenced to a bad-conduct discharge, confinement for 110 days, forfeiture of $1,100.00 pay per month for four months, and reduction to the grade of E-1. The plea agreement limited confinement to five months for each offense, running concurrently. In post-trial processing, the convening authority took no action on the sentence, and the military judge entered the findings and sentence as the judgment of the court-martial.

On appeal, Appellant asks whether (1) Appellant's sentence is inappropriate in light of a sentence received by another junior enlisted Airman, CM, for essentially the same misconduct; (2) trial counsel committed plain error by arguing facts not in evidence; and (3) the convening authority erred by failing to act on the sentence. We have considered issue (2) and find it does not require discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). After examining the remaining issues, we find no error materially prejudicial to Appellant's substantial rights occurred. Concluding that the findings and sentence are correct in law and fact, and should be approved, we affirm the findings and sentence.

## I. BACKGROUND

Each of the four convictions under review are founded on Appellant's judicial admissions to using controlled substances before and after she entered military service. As a factual basis for accepting her pleas of guilty, the military judge relied on a stipulation of fact between Appellant, Appellant's counsel,

---

[1] Reference to Article 83, UCMJ, *Fraudulent enlistment, appointment, or separation*, is to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). References to Articles 107 and 112a, UCMJ, are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). Except where noted, all other references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the 2019 *MCM*.

and trial counsel in addition to Appellant's sworn statements during the providence inquiry.[2] The following summarizes relevant portions of those admissions.

As part of her application to enter the United States Air Force, Appellant lied about her pre-enlistment use of cocaine. She signed an Air Force Form 2030 (AF Form 2030),[3] falsely stating she had never used any illegal drug or narcotic. Appellant then enlisted in the Air Force effective 24 April 2018, and entered active duty on 7 August 2018. During the providence inquiry, Appellant admitted she used cocaine "one time prior to [her] enlistment." Appellant told the military judge she completed the AF Form 2030 on the advice of her recruiter to whom she disclosed her pre-service drug use. Upon questioning by the military judge, Appellant recalled her recruiter explaining that her drug use was "going to hurt [her] chances of getting in." At that time and according to Appellant, the recruiter advised her to complete the form in a manner which reflected no prior illegal drug use.[4] Appellant admitted her "enlistment was procured by the false representation" she made on the form. Appellant's misrepresentation was the basis for her fraudulent enlistment conviction.

Appellant arrived at her permanent duty station, Dyess Air Force Base (AFB), Texas, on 24 November 2018. In May 2020 she and three other junior enlisted Airmen, CM, MS, and SM, discussed using LSD. Later that month, at the end of a long weekend, Appellant and the others used LSD during a party at CM's off-base apartment.[5] One of the Airmen, MS, initially voiced reservation about using the drug because she had never used drugs before and would be taking her Career Development Course exams after the weekend. According to a statement that MS made under a grant of immunity, and as stipulated by Appellant, Appellant tried to convince MS to do it anyway, and together with encouragement from SM, MS decided to use LSD. Appellant also stipulated that a statement was given to law enforcement by another junior enlisted Airman who witnessed a conversation at a pool party a few weeks after the long weekend discussed above. As stipulated by Appellant, the witness stated in her interview that she heard Appellant, CM, MS, and SM talking about using LSD

---

[2] Before placing Appellant under oath, the military judge explained her statements may be used in sentencing. Appellant acknowledged she understood.

[3] Air Force Form 2030, *USAF Drug and Alcohol Abuse Certificate* (15 Aug. 2017).

[4] Appellant satisfied the military judge that she was not under duress when completing the form in the way that she did. In her telling, "At the end of the day, I chose and I still had that choice. [The recruiter] never took that choice away from me."

[5] Appellant stipulated "[e]ither" CM or SM "mentioned he had LSD and if [Appellant] and [MS] wanted to use the LSD, they could."

a few weeks earlier. Appellant's conduct in CM's apartment in May 2020 was the basis for her conviction for wrongful use of LSD.

Among peers, Appellant was known to talk about using cocaine before she was in the military and wanting to use it again. In that regard, Appellant stipulated that a military peer stated in witness interviews with the Government that Appellant was heard "comment[ing] that she spent money she earned from her high school job on cocaine." As stated by the peer, Appellant made this remark "around several other Airmen." According to another statement that MS made under a grant of immunity, and also as stipulated by Appellant, MS and Appellant had a conversation in which they talked about wanting to use cocaine: MS brought up the subject that she wanted to try the drug and Appellant opined "that it makes you happier."

Appellant and MS had that opportunity on 6 June 2020, when they used cocaine with the same group of friends who used LSD in May. This time Appellant used the drug during a party at MS's off-base apartment. During the gathering, CM, accompanied by SM, left to purchase the cocaine from a civilian supplier. When they returned, both civilian and military personnel were present. Appellant and the three other Airmen went to MS's bedroom where they paid for and used the drug. They did so after CM arranged four lines of powder. Appellant first put some cocaine in her mouth and rubbed it on her gums "to try it." Appellant and the other Airmen took turns snorting the lines through a rolled-up ten-dollar bill. Other Airmen who were at the apartment suspected Appellant, CM, MS, and SM had used drugs at the party. MS's roommate, also a junior enlisted Airman, reported his suspicion to military officials, and an investigation ensued. Appellant's conduct in MS's apartment on 6 June 2020 was the basis for her conviction for wrongful use of cocaine.

Special agents of the Air Force Office of Special Investigations (AFOSI) participated in the investigation of Appellant and her friends. As part of that investigation, Appellant was advised and waived rights afforded her by Article 31, UCMJ, 10 U.S.C. § 831. Appellant told AFOSI agents she used cocaine on 6 June 2020, but she also lied to the agents, falsely stating that she "had never used cocaine before." During the providence inquiry with the military judge, Appellant admitted this statement was false because she "had used cocaine on one other occasion before 6 June 2020." As reason for lying, Appellant explained she "didn't want to contradict [her]self with the paperwork that [she] had signed when [she] joined" the Air Force. In her telling, she "was thinking about [her] recruiter and what he had said to [her]" when she signed the enlistment paperwork. Appellant's statement to the AFOSI agents was the basis for her conviction for making a false official statement.

**A. Sentence Review**

In Appellant's first assignment of error, she urges the court to reduce her sentence, explaining that a "co-actor," CM, "received less confinement, less forfeitures, and no punitive discharge for essentially the same misconduct." Appellant contends that "in light of this highly disparate sentence," the adjudged punitive discharge is inappropriate and should not be approved.

Before examining Appellant's contention, we consider whether Appellant's sentence is inappropriate without regard to sentences adjudged in other cases, such as CM's. In that regard, we are mindful that sentence comparison is but one aspect of evaluating whether a sentence is inappropriate. *United States v. Anderson*, 67 M.J. 703, 707–08 (A.F. Ct. Crim. App. 2009) (per curiam).

**1. Sentence Appropriateness Review**

*a. Additional Background*

During the providence inquiry, Appellant told the military judge that the Air Force recruiter was aware of her illegal drug use because Appellant told him about it. Specifically, Appellant stated that she was advised by her recruiter to answer the question on AF Form 2030, "Have you ever experimented with, used, or possessed, any illegal drug or narcotic," by initialing the block "No." In Appellant's telling, "That was what he said throughout the entire enlistment process. I do recognize that it was still my decision at the end of the day, and I still initialed 'No,' even though I had used before." The military judge asked, "So, you, basically told your recruiter the truth, . . . but he told you, 'That's going to hurt your chances of getting in, so you should initial 'No,' and then you chose to do that?" Appellant responded in the affirmative, explaining "I was just going through a lot at the time and I just wanted to get out of my hometown. And I knew that if I initialed the 'Yes,' that possibly could make it to where I couldn't [enlist in the Air Force]."

Appellant's Air Force recruiter testified in the Government's sentencing case. He remembered meeting with Appellant,[6] but he maintained that she did not disclose to him that she had used cocaine. He explained why he would not encourage anyone to lie on an AF Form 2030: "[i]t's morally wrong as well as [his] career is not worth risking." He explained, moreover, that personnel at the Military Entrance Processing Station (MEPS) will re-interview individuals about their drug history. Recruiters can be penalized for intentionally sending

---

[6] The recruiter recalled Appellant "was one of the few individuals that [he] had to drive to meet with. She live[d] about two and-a-half hours away. So, [he] remember[ed her], specifically, because [they] would meet a lot of the time, halfway in-between [his] location and hers, or at her school."

a disqualified individual to the MEPS. The Government's sentencing case included a letter of counseling (LOC) attached to the stipulation of fact. The LOC referenced Appellant's lack of attention to detail in performing assigned duties, for which Appellant also had been counseled on a previous occasion.

Appellant's sentencing case included pictures of her family and testimony of her mother. Her mother explained that Appellant was close to her two younger siblings, a brother and sister. Appellant had to work hard to earn good grades in school, and Appellant experienced "conflicted emotion[s]" when her biological father died when she was ten years of age. Appellant's sentencing case also consisted of two character letters, two letters of appreciation, and recognition she earned as her unit's "Professional of the Month" in her two and a half years of military service.

Appellant provided oral and written unsworn statements, explaining her parents divorced when she was eight years old, and her father passed away from a heart attack shortly thereafter. Her mother remarried when Appellant was in middle school, and her stepfather began making sexual advances towards Appellant, which later contributed to her decision to leave home. Appellant was an honors student in high school. She was accepted to Portland State University, but decided to enlist "to get out of [her] hometown." Appellant explained she began using drugs when she was assigned to Dyess AFB owing to negative influence of an individual who "was involved in drugs and had access to drugs." She felt lonely upon arrival at Dyess AFB, a problem that was magnified during the charged timeframe as she worked remotely during the coronavirus disease pandemic.

### b. Law and Analysis

A Court of Criminal Appeals (CCA) reviews de novo the question whether all or part of a sentence is inappropriate. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). In conducting this review, a CCA may affirm only "the sentence or such part or amount of the sentence" as it finds "correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). It follows that a sentence should be approved only to the extent it is found appropriate based on a CCA's review of the entire record.

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *Anderson*, 67 M.J. at 705). Although we are empowered to "do justice" in reference to a legal standard, we have no discretion to grant

mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

We have considered the particular circumstances of Appellant's case, including her convictions for use of illegal drugs, fraudulent enlistment, and false official statement. We have also considered the extenuation and mitigation evidence presented. In that regard, we credit the testimony of the recruiter over Appellant's statements made under oath in the providence inquiry.[7] We also considered the LOC as some indication of Appellant's duty performance. We have given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record below. Without regard to sentences adjudged in other cases, we conclude that Appellant's sentence consisting of a bad-conduct discharge, confinement for 110 days, forfeiture of $1,100.00 pay per month for four months, and reduction to the grade of E-1, is not inappropriate.

### 2. Sentence Disparity Claim

Next, we examine Appellant's contention that a bad-conduct discharge is not among the punishments that "should be approved," Article 66(d)(1), UCMJ. Appellant reasons that CM received neither confinement nor a punitive discharge despite his greater culpability in that CM was also convicted of wrongfully distributing the illegal substances relevant here.

Appellant's case presents a similar situation as *United States v. Durant*, 55 M.J. 258 (C.A.A.F. 2001). In that case, the United States Court of Appeals for the Armed Forces (CAAF) considered whether a Court of Criminal Appeals has a duty to "mitigate a sentence, which that court otherwise determines to be appropriate," based upon a sentence adjudged in another case. *Id.* at 259. In its decree, the CAAF concluded "that the Court of Criminal Appeals did not abuse its discretion in reviewing appellant's sentence for appropriateness *and* uniformity" *Id.* at 263 (emphasis added).[8]

Unlike the appellant in *Durant*, however, Appellant raises the issue of sentence disparity for the first time on appeal, and the Government objects to our

---

[7] "Unlike most intermediate appellate courts and [the United States Court of Appeals for the Armed Forces (CAAF)], the Court of Criminal Appeals has factfinding powers." *United States v. Cendejas*, 62 M.J. 334, 342 (C.A.A.F. 2006) (citing Article 66, UCMJ, 10 U.S.C. § 866).

[8] The *Durant* decree might suggest that a CCA's review for relative uniformity is separate and distinct from evaluating whether a sentence is inappropriate. Elsewhere, however, the opinion treats a CCA's uniformity review as one component of that evaluation. 55 M.J. 258, 261 (C.A.A.F. 2001) (stating, for example, that "[t]he military justice system promotes sentence uniformity through Article 66[, UCMJ,] and the requirement that the [CCAs] engage in a sentence appropriateness analysis").

examination of extra-record results of other courts-martial such as CM's. In the analysis that follows, we (a) examine the factual background to Appellant's assignment of error; (b) assess the Government's objection to our considering extra-record information; (c) evaluate CM's convictions and sentence in relation to Appellant's; and (d) consider sentences imposed upon CM, MS, and SM to determine whether Appellant's bad-conduct discharge "should be approved," Article 66(d)(1), UCMJ. Ultimately, we conclude that relief is not warranted for Appellant's claim of sentence disparity.

### a. Additional Background

After securing convictions of MS and SM for their wrongful use of a controlled substance, the Government prosecuted Appellant. CM's court-martial convened after Appellant's and he was the last of the four Airmen of the group to be tried and sentenced. During post-trial processing, Appellant did not assert relief was warranted on the basis that her sentence was disproportionate in relation to MS and SM. Because CM had yet to be tried or sentenced, the entry of judgment for his court-martial was not available to Appellant when she sought clemency from the convening authority.[9]

After Appellant's case was submitted to the court, Appellant brought information to our attention about the special courts-martial of CM, MS, and SM. After docketing, Appellant moved to attach the entries of judgment for CM and MS, and a "[c]ourt-martial summary" for SM.[10] Over the Government's opposition, we granted the motion by order of the court. In doing so, we deferred deciding whether we are authorized to consider the results in those cases until we performed our Article 66, UCMJ, 10 U.S.C. § 866, review of Appellant's case. This is that review.

According to the entry of judgment issued after CM's court-martial, CM was the only Airman of the four who chose to be sentenced by a panel of members. Like Appellant, CM pleaded guilty and was convicted of fraudulent enlistment, false official statement, wrongful use of LSD, and wrongful use of cocaine. The gravamen of CM's fraudulent enlistment conviction, like Appellant's, was preservice drug use. However, the basis for his false official statement conviction was slightly different. Whereas Appellant lied to AFOSI

---

[9] As noted above, Appellant was sentenced on 14 January 2021. The convening authority issued his Decision on Action memorandum on 29 January 2021, and the military judge entered judgment on 30 January 2021. Subsequently, CM was sentenced on 18 February 2021 and judgment entered on 4 March 2021.

[10] The summary showed results from "The Judge Advocate General's Corps Air Force Docket," on a "Public Docket" Internet web page.

agents about preservice drug use, CM's false statement to investigators was that "he never saw or used any drugs on the evening of 6 June 2020."[11] Unlike Appellant, CM also pleaded guilty and was convicted of the additional offenses of wrongful distribution of LSD and cocaine. For these six offenses, members sentenced CM to hard labor without confinement for three months, forfeiture of $500.00 pay per month for three months, and reduction to the grade of E-1. Neither confinement nor a punitive discharge was imposed.

Unlike the Government's prosecution of Appellant and CM, MS and SM garnered only one conviction each after pleading guilty to wrongfully using a controlled substance. Both MS and SM received a sentence that included confinement, and neither received a punitive discharge. According to the entry of judgment in MS's case, MS was found guilty of one specification of using cocaine in violation of Article 112a, UCMJ. A military judge sentenced her to serve 70 days of confinement, to forfeit $1,200.00 pay per month for 3 months, and to be reduced to the grade of E-1. According to the summary for SM, he was found guilty of one specification. The summary reads, "Wrongful Use of Schedule I, II or III drugs" in violation of Article 112a, UCMJ. The summary does not further specify the controlled substance that SM used. A military judge sentenced SM to serve 75 days of confinement, to forfeit $1,000.00 pay per month for 2 months, and to be reduced to the grade of E-1.

### b. Extra-Record Results of Other Courts-Martial

We begin our analysis of Appellant's first assignment of error with the Government's opposition to our consideration of extra-record results of the special courts-martial of CM, SM, and MS to compare with Appellant's sentence. As noted above, we deferred answering the question whether we could consider those results until our Article 66, UCMJ, review. In the present case, we will assume for purposes of this appeal only that we may consider this information, but not without caution. For now, we follow the opinions of other panels of this court that have rejected the Government's contention that outside-the-record information cannot be used in the manner Appellant argues it should.[12]

---

[11] According to Appellant's stipulation of fact, CM's conviction was related to a party at MS's apartment on 6 June 2020 when all four Airmen used cocaine.

[12] *See United States v. Marable*, No. ACM 39954, 2021 CCA LEXIS 662, at *26–27 (A.F. Ct. Crim. App. 10 Dec. 2021) (unpub. op.), *rev. denied,___* M.J. ___, No. 22-0107, 2022 CAAF LEXIS 244 (C.A.A.F. 29 Mar. 2022); *United States v. Daniel*, No. ACM S32654, 2021 CCA LEXIS 365, at *5, n.4 (A.F. Ct. Crim. App. 26 Jul. 2021) (unpub. op.), *rev. denied*, 82 M.J. 99 (C.A.A.F. 2021); *United States v. Cruspero*, No. ACM S32595 (f rev), 2021 CCA LEXIS 208, at *7, n.2 (A.F. Ct. Crim. App. 30 Apr. 2021) (unpub. op.), *rev. denied*, 82 M.J. 15 (C.A.A.F. 2021). The Government maintains these opinions stand in conflict with the CAAF precedent.

Relying on a line of cases beginning with *United States v. Fagnan*, the Government contends that a CCA may only consider what is contained in the record below when reviewing a sentence under Article 66, UCMJ. 30 C.M.R. 192, 194 (C.M.A. 1961) (observing that "the board of review is expressly restricted by Congress to the 'entire record' in assessing the appropriateness of the sentence"). The Government is correct that the record of proceedings, including post-trial processing, does not include sentences in other cases as may be compared with Appellant's. It follows that if matters we ordered attached to the appellate record may not be considered, then there is insufficient information to decide whether Appellant's sentence is disparate compared to CM's as claimed.

Even now, a CCA's consideration of material outside the record[13] is not without concern. Over a half-century after *Fagnan*, the CAAF cautioned "CCAs may not consider anything outside of the 'entire record' when reviewing a sentence" under Article 66, UCMJ. *United States v. Jessie*, 79 M.J. 437, 441 (C.A.A.F. 2020). Bearing in mind our responsibility to review a sentence under this article, "[t]he 'entire record' restriction . . . applies equally whether the CCA is reviewing a sentence's correctness in law, reviewing a sentence's correctness in fact, or determining whether a sentence should be approved." *Id.* at 444 (footnote omitted). In *United States v. Willman*, the CAAF reaffirmed that CCAs "could not consider evidence outside the record to determine sentence appropriateness" under Article 66, UCMJ. 81 M.J. 355, 361 (C.A.A.F. 2021).

In reliance on *Willman* and *Jessie*, the Government argues that SM and MS had already been sentenced when Appellant sought clemency from the convening authority and that Appellant did not mention their sentences, much less argue sentence disparity, in clemency.[14] The Government argued in its opposition to Appellant's motion to attach that an appellant should be required to question sentence disparity at the time "when the underlying facts are available to the [appellant] before the entry of judgment." Notably absent from this line of reasoning is that Appellant seeks to compare her case with CM's, and not SM's or MS's. However, because of the order in which the three cases were

---

[13] The entire record includes both the record below and matters attached to the record. *See United States v. Jessie*, 79 M.J. 437, 440–41 (C.A.A.F. 2020) (citing *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988)); *see also* R.C.M. 1112(b), *Contents of the record of trial*; R.C.M. 1112(f), *Attachments for appellate review*. In addition, the "entire record" includes briefs and arguments that appellate counsel and an appellant personally present regarding matters that are already in the record or have been attached to the record. *Jessie,* 79 M.J. at 440–41.

[14] As discussed later in our opinion, the focus of Appellant's 20 January 2021 clemency submission was reduction in confinement due to concerns about coronavirus disease transmission in Texas prisons.

prosecuted in relation to Appellant's, her first chance to supplement the record and claim disparity between CM's sentence and her own is on appeal. If necessity were our guide, this practical fact would lead us to reject at once the Government's contention.

Appellant contends *Jessie* has no bearing on, much less disturbs, this court's responsibility to engage in sentence comparison under Article 66, UCMJ. Appellant further contends that *Jessie* allows a CCA to consider the matters submitted for our consideration, which we attached to the appellate record. We agree with Appellant that our superior court's precedent in regard to a CCA's responsibility to review for sentence appropriateness necessarily involves comparing one case against others, which may imply consideration of outside-the-record results in other cases.

Yet, Appellant cites no precedent, and we find none, in which this court or our superior court recognized an exception to allow extra-record information about results in a related case that formed no part of the record. If anything, the contrary is true. Between the bookends of *Fagnan*, on the one hand, and *Jessie* and *Willman*, on the other, our superior court is steadfast that a CCA's sentence appropriateness review is limited to the record. In that regard, "[w]hat constitutes the 'entire record' for review of *sentence appropriateness* has been understood to include not only evidence admitted at trial, but also the matters considered by the convening authority in his action on the sentence." *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (first citing *United States v. Bethea*, 46 C.M.R. 223, 225 (C.M.A. 1973); and then citing *Fagnan*, 30 C.M.R. at 195). Likewise, the CAAF "has held that Article 66[, UCMJ,] limits the Courts of Criminal Appeals 'to a review of the facts, testimony, and evidence presented at the trial, and precludes a Court of Criminal Appeals from considering 'extra-record' matters when making determinations of guilt, innocence, and sentence appropriateness.'" *United States v. Holt*, 58 M.J. 227, 232 (C.A.A.F. 2003) (quoting *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)) (additional citations omitted).

For the reasons that follow, we nonetheless assume for the purpose of this appeal that Appellant's specific contention—that sentence disparity claims are unique—is not inconsistent with *Jessie*, particularly aspects of that decision where the CAAF observed that some of its "precedents have permitted the CCAs to supplement the record." 79 M.J. at 440. One line of precedent allows a CCA to consider information that is outside the record "when necessary for resolving claims of ineffective assistance of trial defense counsel *and a wide variety of other issues* when those claims and issues are raised by the record but are not fully resolvable by the materials in the record." *Id.* at 442 (emphasis added). In reference to its decisions that developed this line of precedent, the CAAF concluded "[t]hose decisions also could not be easily cabined" and

thereby kept within narrow limits. *Id.* at 445. In the present case, Appellant's disparity claim is arguably among the "variety of other issues . . . not fully resolvable by the materials in th[is] record." *Id.* at 442 (observing the CAAF has "justified the exception to the strict language" of Article 66, UCMJ, "on grounds of precedent and necessity"). It follows that if the disparity issue is raised by the record, but not fully resolvable by the record, then it would be necessary for the court to review one or more other sentences to resolve her claim.

We assume, also, that the issue is raised by the record. The gravamen of Appellant's misconduct was wrongful use of controlled substances both before and after her entry on active duty. The complicity of CM, SM, and MS in relation to Appellant was first raised in Appellant's stipulation of fact, and each Airman was mentioned either in the providence inquiry or sentencing evidence. We shoulder this assumption despite the fact that the *issue* of disparity with CM's sentence was not identified until after Appellant's case was docketed with the court. In that regard, however, the same could be said of claims of constitutionally deficient representation that are raised by the record when such issues are first identified on appeal. And yet, it is clearly permissible to allow a record to be supplemented when such claims are raised for the first time on direct review. In *Jessie*, for example, the CAAF observed that an appellant's assertion that he received ineffective assistance from trial defense counsel is a sufficiently "legitimate and salutary reason[ ]" for a CCA "to have the discretion to obtain evidence by affidavit, testimony, stipulation, or a fact-finding hearing, as it deems appropriate." *Id.* at 446 (quoting *United States v. Boone*, 49 M.J. 187, 193 (C.A.A.F. 1998)).

In the present case, necessity could compel a similar result as it does for claims of ineffective assistance of trial defense counsel. This especially may be true where an appellant challenges a sentence that is comparatively disparate in reference to a sentence that was adjudged after her opportunity to seek clemency has passed. Such result, moreover, would be consistent with interpretations of our statutory jurisdiction. To that end, both the CAAF and its predecessor, the United States Court of Military Appeals, have examined the legislative history of Article 66, UCMJ, which is at the core of this court's authority to compare sentences as part of a CCA's review for sentence appropriateness. Those examinations rely on a clear congressional purpose that envisioned Boards of Review—now CCAs—might redress disparities in court-martial sentences on direct review:

> Congress enacted Article 66 of the Uniform Code of Military Justice with the purpose of establishing uniformity of sentencing throughout the armed forces. "The Board [of Review] may set aside, on the basis of the record, any part of a sentence either

because it is illegal or because it is inappropriate. *It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces.* (See Art. 67(g) [(1950)].)"

*United States v. Henry*, 42 M.J. 231, 234 (C.A.A.F. 1995) (alterations in original) (emphasis added) (quoting H.R. Rep. No. 491, 81st Cong., 1st Sess. 32–33 (1949)); *see also United States v. Olinger*, 12 M.J. 458, 460 (C.M.A. 1982) (observing that Congress granted CCAs power to establish uniformity of sentences); *United States v. Simmons*, 6 C.M.R. 105, 106 (C.M.A. 1952) (reaching the same conclusion after reviewing Senate and House of Representative reports); *United States v. Owens*, 2 C.M.R. 655, 657 (A.F.B.R. 1951) (reaching the same conclusion after examining the legislative history of Article 66, UCMJ, in Armed Services Committee reports).

In line with this broad congressional purpose, we assume for purposes of this appeal that CCAs have a responsibility to assess whether a sentence is inappropriate, to include consideration of outside-the-record results in other cases when such claim is raised by the record. We turn then to consider the extra-record information we attached to the appellate record to decide Appellant's contention that her sentence is highly disparate compared to CM's and warrants relief.

### c. Evaluation of CM's Convictions and Sentence

Citing *United States v. Lacy*, Appellant identifies CM's case for comparison as one "closely related" to her own. 50 M.J. 286, 288 (C.A.A.F. 1999). In *Lacy*, the CAAF described a CCA's "sentence review function" as "highly discretionary." *Id*. Our responsibility in that regard includes "considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citing *Lacy*, 50 M.J. at 287–88). In conducting such reviews, we "are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *Id*. (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

In *Lacy*, the CAAF observed the interplay between individualized sentencing and uniformity:

> Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to "utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding [the] accused's delict, his sentence was appropriate. In short, it was hoped to attain *relative* uniformity rather than an arithmetically averaged sentence."

50 M.J. at 288 (alteration in original) (quoting *Olinger*, 12 M.J. at 461) (additional citation omitted).

When arguing sentence disparity and asking the court to compare Appellant's sentence with the sentences of others, "an appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case *and* that the sentences are 'highly disparate.'" *Id.* At the same time, a CCA is not "constrained to specifically limit its comparison of sentences to closely related cases." *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001); *see also Anderson*, 67 M.J. at 705 ("In making a sentence appropriateness determination, [CCAs] are required to examine sentences in closely related cases and permitted, but not required, to do so in other cases." (citing *Wacha*, 55 M.J. at 267–68) (additional citation omitted)). "If the appellant meets that burden, or if the court raises the issue on its own motion, then the Government must show that there is a rational basis for the disparity." *Lacy*, 50 M.J. at 288.

Cases are "closely related" when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* The test for whether sentences are "highly disparate" is "not limited to a narrow comparison of the relative numerical values of the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment." *Id.* at 289.

"Sentence comparison does not require sentence equation." *Durant*, 55 M.J. at 260. "[T]he military system must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual." *Id.* at 261. "[C]harging decisions by commanders in consultation with their trial counsel, as well as referral decisions by convening authorities after advice from their Staff Judge Advocates, can certainly lead to differences in sentencing." *Id.*

### i) Appellant's "Closely Related" Claim

As shown by Appellant's stipulation of fact, Appellant and CM wrongfully used LSD and cocaine under like circumstances. As stipulated, they used each drug at an identical time and place in the presence of the other. Although Appellant and CM were not plainly co-actors involved in a common crime,[15] they

---

[15] In *United States v. Lacy*, the CAAF found three servicemembers were *co-actors* because they each "had sexual intercourse with an underage girl in the presence of each other" and "[a]ll three pleaded guilty to indecent acts and carnal knowledge." 50 M.J. 286, 287 (C.A.A.F. 1999). All three pleaded guilty and were convicted in accordance with their pleas by the same military judge sitting as a general court-martial. *Id.*

each sought to use illegal drugs and then did so, which to us suggests the existence of a "common or parallel scheme." *See id*. If their individual Article 112a, UCMJ, convictions were all this court considered to determine whether their cases were closely related, we would not have difficulty finding Appellant has shown that they were.

However, Appellant and CM also stand convicted of fraudulent enlistment after they independently misrepresented preservice drug use in applications to join the Air Force. Each was convicted, also, of separately making a false official statement to military investigators with intent to deceive. As charged and convicted, Appellant lied that she used cocaine for the first time on 6 June 2020, and CM lied that he never saw or used any drugs on the evening of 6 June 2020. Appellant contends these convictions are for "essentially the same misconduct." The Government disagrees, arguing both offenses are founded on misconduct each "committed alone." Recognizing that Appellant and CM were convicted of acts each committed without assistance from or collaboration with the other, the Government urges this court to find Appellant has not shown a sufficiently "direct nexus" between her case and CM's for their cases to be closely related. *See Lacy*, 50 M.J. at 288.

We find merit to the Government's argument. On the one hand, Appellant and CM used drugs with the same friends, they were subjects of what was likely a joint investigation, and they were convicted of using the same drugs at the same time. On the other hand, each was convicted of two offenses for independently misrepresenting what they knew about their own drug use to military officials. We agree with the Government that misrepresentations each made to authorities lack an obvious "*direct nexus* between the servicemembers whose sentences are sought to be compared." *See id.* (emphasis added). "The mere similarity of offenses is not sufficient." *United States v. Washington*, 57 M.J. 394, 401 (C.A.A.F. 2002) (citing *Wacha*, 55 M.J. at 267–68).

We decline to find a nexus where the common link is that two Airmen independently violated the same article of the UCMJ and harbored a similar purpose—in this case, an intent to deceive—when they separately committed the misconduct at issue. The self-serving statements each made before enlisting and when their conduct was under investigation establish mere similarity of offenses, but do not satisfy the required showing of nexus. In that regard, two of the four convictions involve neither co-actors collaborating in the commission of a common crime, Airmen involved in a scheme to deceive military officials, or other direct nexus. While their cases are related, they are not closely related overall.

### *ii) Relative Uniformity Review*

Nonetheless, we find Appellant has identified a case that should trigger this court's sentence appropriateness review by reference to a sentence adjudged in another case. We reach this conclusion even though we are not convinced Appellant met her burden to show her case and CM's are closely related under *Lacy*. Instead, we are mindful that this court is not "constrained to specifically limit its comparison of sentences to closely related cases." *Wacha*, 55 M.J. at 267; *see also Anderson*, 67 M.J. at 705 (observing "we are required to examine sentences in closely related cases and permitted, but not required, to do so in other cases"). In that regard, we credit Appellant's point that the entries of judgment for each reflect similar kinds of misconduct.

Therefore, we will consider the result of CM's court-martial as part of our determination whether Appellant's sentence is "both relatively uniform and appropriate." *Wacha,* 55 M.J. at 268. This responsibility "reflects the unique history and attributes of the military justice system," which, as noted above, includes "considerations of uniformity and evenhandedness of sentencing decisions." *Id.* (quoting *Sothen*, 54 M.J. at 296).

Appellant was convicted of fewer offenses and received both confinement and a bad-conduct discharge. As previously noted, CM's sentence included neither confinement nor a punitive discharge. Despite committing two of the same offenses—their convictions for wrongful use of LSD and cocaine are founded on identical specifications—CM received 90 days of hard labor without confinement and significantly lower forfeiture of pay than Appellant. Importantly, CM was also convicted of one specification each for wrongful distribution of LSD and cocaine, which are serious offenses often warranting lengthy confinement and a punitive discharge. However, neither punishment was imposed.

Citing *Durant*, the Government argues there will always be some variation between sentences given the individualized nature of sentencing. 55 M.J. at 261 ("[T]he military system must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual."). However, this argument is less a reason to excuse a variation in the present case than an example why the CAAF has charged CCAs with the responsibility to examine sentences for relative uniformity consistent with its finding of congressional purpose that a CCA has the power to redress disparities. *See generally Henry*, 42 M.J. at 234.

Relying on *Lacy*, the Government argues, moreover, that the disparity here is not so extreme compared to the maximum punishment without regard to the 12-month jurisdictional limit on confinement at a special court-martial. 50 M.J. at 289 ("The test in such a case is not limited to a narrow comparison of the relative numerical values of the sentences at issue, but also may include

consideration of the disparity in relation to the potential maximum punishment."). Appellant argues her case should not turn on maximum punishments that are beyond the jurisdiction of a special court-martial.

We are likewise not persuaded by the Government's argument. All other things being equal, if both cases had been referred to general courts-martial, CM would have faced a maximum punishment that included an additional 30 years' confinement because of his pleas of guilty to distributing LSD and cocaine.[16] Consideration of Appellant's and CM's sentences in relation to the maximum punishment in a different forum does not change the fact that CM would have faced a much higher maximum punishment for his greater culpability, and yet CM received a sentence that included neither confinement nor a punitive discharge unlike Appellant who received both. We conclude Appellant's sentence compared solely to CM's is not uniform, however that comparison is not all we consider in the broader context of evaluating relative uniformity.

### d. Relative Uniformity with Other Cases

In her reply brief, Appellant explains she "only seeks to compare her case with CM's case." However, our inquiry into relative uniformity does not end with consideration of the results of CM's court-martial. As noted previously, our statutory responsibility to review sentence appropriateness "includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *Sothen*, 54 M.J. at 296. When exercising this authority we are not constrained to similar cases identified by an appellant. We may examine other cases *sua sponte*. *Id.* (observing a CCA may engage in sentence comparison "on its own motion"). Our authority to review other cases as we deem appropriate is consistent with a CCA's responsibility to "do justice" while adhering to Article 66, UCMJ, although we have no discretion to grant mercy. *Nerad*, 69 M.J. at 146.

In the present case, we find setting aside Appellant's bad-conduct discharge to lessen disparity with CM's sentence would not promote the congressional purpose of sentencing uniformity that underlies our statutory jurisdiction. In that regard, MS and SM were each convicted of one specification of wrongful use of a controlled substance. Their sentences included confinement—70 and 75 days, respectively—and no punitive discharge. During Appellant's sentencing, the military judge similarly imposed 90 and 100 days' confinement for her wrongful use of cocaine and LSD, respectively.

---

[16] At a general court-martial, Appellant would have faced a maximum sentence that included confinement for 17 years. CM would have faced 47 years' confinement.

If we were to set aside the bad-conduct discharge, Appellant's sentence that included 110 days' confinement would be comparable to sentences imposed for MS and SM, despite Appellant's conviction for committing three additional violations of the UCMJ. For one of those violations—fraudulent enlistment—the military judge sentenced Appellant to 110 days' confinement. We find Appellant's additional misconduct as set forth in three convictions that are absent from MS's and SM's cases provides a rational explanation for the bad-conduct discharge that was adjudged in her case. Under the circumstances, the relief Appellant seeks is not warranted in relation to the results in those cases.

### 3. Conclusion

Appellant's case is not one of "those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Sothen*, 54 M.J. at 296 (citation and internal quotation marks omitted). In conducting a sentence review, a CCA has responsibility to evaluate "both the data provided by [an] appellant and the specific circumstances of [an] appellant's case." *Washington*, 57 M.J. at 401. We have done so. Appellant's sentence is not inappropriate based on the record below and also with regard to sentences adjudged in other cases when that information was brought to this court's attention on appeal.

In our examination of Appellant's case both individually, and in relation to the others, we "utilize the experience distilled from years of practice in military law" as our superior court allows when a CCA examines questions of sentence disparity. *Lacy,* 50 M.J. at 288; *see also Ballard*, 20 M.J. at 286 (observing that "military lawyers who find themselves appointed as trial judges and judges on the courts of military review have a solid feel for the range of punishments typically meted out in courts-martial"). It is an unfortunate reality that we are especially mindful of the range of punishments in drug cases from hundreds of such cases we have seen in our careers. Appellant's sentence would not be relatively uniform compared to the sentences of MS and SM if we granted the requested relief by setting aside the bad-conduct discharge. We are confident that granting relief would not further the objective of relative uniformity in sentencing "in a system that values individualized punishment." *Lacy*, 50 M.J. at 288.

For the reasons discussed, the sentence that "should be approved," Article 66(d)(1), UCMJ, can be determined solely by reference to the record of proceedings below. Having considered all matters before the court in conducting our sentence appropriateness review, Article 66(d)(1), UCMJ, we conclude that relief is not warranted.

## B. Convening Authority's Decision on Action

In another assignment of error, Appellant claims prejudice from the convening authority's failure to take action on the sentence. She urges the court to remand her case for proper post-trial processing. We are not persuaded relief is warranted.

As noted above, Appellant was convicted of fraudulent enlistment for falsely representing that she had not unlawfully used a controlled substance before entering the Air Force. Among the elements of this offense, the Government alleged that, on or about 7 August 2018, Appellant made a knowingly false representation that she had not used illegal drugs when, in fact, she had used cocaine. Because Appellant was found guilty of at least one specification involving an offense before 1 January 2019, the convening authority was required to approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part. *United States v. Brubaker-Escobar*, 81 M.J. 471, 472 (C.A.A.F. 2021) (per curiam); *see also* Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.)) (2016 *MCM*).

However, the convening authority did none of these things. To the contrary, the convening authority stated in a Decision on Action memorandum, "I take no action on the sentence."[17] It follows, then, that the convening authority made a procedural error by failing to act on the sentence. *Brubaker-Escobar*, 81 M.J. at 474–75 (holding that the convening authority erred by taking "no action" on the sentence). In line with Article 59(a), UCMJ, 10 U.S.C. § 859(a), "procedural errors are 'test[ed] for material prejudice to a substantial right to determine whether relief is warranted.'" *Id.* at 475 (alteration in original) (quoting *United States v. Alexander*, 61 M.J. 266, 269 (C.A.A.F. 2005) (distinguishing procedural errors tested for material prejudice from errors that deprive a court of jurisdiction)).

After the conclusion of her court-martial, Appellant did not raise a motion under Rule for Courts-Martial (R.C.M.) 1104(b)(2)(B) to challenge the form or validity of the convening authority's decision. *See also* R.C.M. 1104(b)(1)(F) (allowing post-trial motion to address "[a]n allegation of error in the convening authority's action"). On appeal, Appellant argues we should review that decision under a plain error standard of review, namely, whether: "(1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citations omitted) (reviewing appellant's failure in his clemency submission to the convening authority to comment on omission in a staff judge advocate's recommendation). Citing *Scalo*, Appellant further argues she need only show "some

---

[17] The convening authority stated, also, "I take no action on the findings in this case."

colorable form of prejudice" to demonstrate relief is warranted. *See id.* at 436–37 (concluding the appellant "has not made a colorable showing of possible prejudice" (quoting *United States v. Kho,* 54 M.J. 63, 65 (C.A.A.F. 2000)). The Government concedes procedural error, but citing *Brubaker-Escobar*, asserts that "this [c]ourt tests for material prejudice to a substantial right." *See* 81 M.J. at 475.

We accept the Government's concession and agree that the proper legal standard to evaluate procedural error like the one here is to test for material prejudice to a substantial right. We reach this conclusion for two reasons. First, and in the main, the convening authority's decision memorandum suffers from the same infirmity as the one in *Brubaker-Escobar*. In that case, the CAAF tested for material prejudice to a substantial right that is in line with Article 59(a), UCMJ. *See id.* Second, the procedural error in *Brubaker-Escobar* and in the present case is a defect in the form of the announcement of a convening authority's decision, and not a post-trial recommendation error where the applicable standard is some colorable showing of possible prejudice.[18] For these reasons, we hew closely to the text and plain meaning of Article 59(a), UCMJ, and *Brubaker-Escobar*, and test for material prejudice to a substantial right.

We turn then to examine the convening authority's Decision on Action memorandum and his statement that he took no action on the sentence. Testing for material prejudice to Appellant's substantial rights, we find relief is not warranted. To begin with, the convening authority was powerless to grant clemency on the adjudged findings. *See* Article 60(c)(3)(A), UCMJ, 10 U.S.C. § 860(c)(3)(A) (2016 *MCM*); R.C.M. 1107(c)(1) (2016 *MCM*). As to sentence, the convening authority was not authorized to disapprove, commute, or suspend the adjudged bad-conduct discharge. *See* Article 60(c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(4)(A) (2016 *MCM*) ("[T]he convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of . . . [a] bad[-]conduct discharge."); R.C.M. 1107(d)(1)(B)(ii) (2016 *MCM*).

Nonetheless, the convening authority had the power to disapprove, commute, or suspend, in whole or in part, the adjudged reduction in grade, forfeiture of pay, and 110 days of confinement. *See* Article 60(c)(2), (c)(4)(A), UCMJ,

---

[18] The CAAF recently stated, "[I]n the context of a post-trial recommendation error," the proper standard is "some colorable showing of possible prejudice." *United States v. Miller*, ___ M.J. ___, No. 21-0222, 2022 CAAF LEXIS 272, at *8 (C.A.A.F. 4 Apr. 2022) (quoting *United States v. Scalo,* 60 M.J. 60 M.J. 435, 436–37 (C.A.A.F. 2005) (stating appellant's burden under 2019 *MCM* procedures)). This standard is unchanged from the low threshold for pre-2019 *MCM* post-trial recommendation error. *See*, *e.g.*, *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (defect in staff judge advocate's recommendation (SJAR)); *United States v. Chatman*, 46 M.J. 321, 324 (C.A.A.F. 1997) (defect in addendum to the SJAR).

10 U.S.C. §§ 860(c)(2), (c)(4)(A) (2016 *MCM*); R.C.M. 1107(d)(1)(A) (2016 *MCM*) (addressing reduction in grade and forfeitures); R.C.M. 1107(d)(1)(B)(i) (2016 *MCM*) (addressing confinement). We then examine whether Appellant was prejudiced by the convening authority failing to take action on these components of the sentence within the meaning of "action" in Article 60(c)(2), UCMJ (2016 *MCM*).

On 20 January 2021, Appellant requested clemency. She asked the convening authority to reduce the adjudged confinement. Appellant largely justified that request on the risk of coronavirus transmission while confined. Appellant also resubmitted character letters that were admitted in sentencing and noted that she took responsibility for her actions. Appellant did not seek modification of the adjudged forfeitures or reduction in grade. The convening authority could have modified these two sentence components, but it is speculative to conclude such relief would have been granted, much less in the absence of a specific request.

The convening authority evaluated Appellant's clemency request, stating he "considered matters timely submitted by the accused under Rule for Courts-Martial 1106"[19] and also consulted with his staff judge advocate. As noted earlier, the convening authority signed a decision memorandum in which he stated that he took "no action on the sentence." After Appellant submitted assignments of error to the court, the Government submitted a declaration from the convening authority. We find that consideration given by the convening authority to Appellant's clemency request is raised by the record, and thus we are not prohibited from considering the declaration in conducting our review. *Jessie*, 79 M.J. at 444 (holding CCAs may consider affidavits when doing so is necessary to resolve issues raised by materials in the record).

In that declaration, the convening authority explained his intent was to deny relief Appellant sought in clemency:

> As the Special Court-Martial Convening Authority, in every case, I take special care to review all matters submitted by an accused, should the accused choose to submit matters. On 29 January 2021, I reviewed and signed the Convening Authority Decision on Action for *United States v. A1C Mellodee L. Behunin.* As I stated in that memorandum, prior to signing the document I considered the matters submitted by A1C Behunin, including her 20 January 2021 request and its attachments—submitted

---

[19] The convening authority apparently meant R.C.M. 1106 in the 2019 *MCM*. *Compare* R.C.M. 1106, *Matters submitted by the accused* (2019 *MCM*), *with* R.C.M. 1106, *Recommendation of the staff judge advocate or legal officer* (2016 *MCM*).

through her counsel—that I reduce her confinement. After considering the submission, I determined that the findings and sentence, as adjudged, were appropriate. In taking no action, my intent was to provide no relief on the findings or sentence and approve the sentence under Article 60, Uniform Code of Military Justice.

Lastly, we decide whether to give weight to this declaration, which is different from the question of whether it may be considered under *Jessie*. In her reply to the Government's answer, Appellant is dismissive of the declaration and urges the court not to consider it. Echoing remarks in a decision by a differently constituted three-judge panel of the court in *United States v. Kerr*, Appellant contends that we should "acknowledge the importance of avoiding unwarranted post hoc speculation that may be caused by this court's reliance on such a declaration." *See* No. ACM S32570, 2020 CCA LEXIS 276, at *7–8 (A.F. Ct. Crim. App. 20 Aug. 2020) (unpub. op.) (finding no prejudice where appellant waived clemency despite errors in the staff judge advocate's recommendation). Appellant is correct that, at times, this court has viewed post-action declarations with skepticism. In *United States v. Arnold*, for example, this court was indifferent about declarations of the acting staff judge advocate who misadvised a convening authority about his clemency power, and of the convening authority who declared that his "decision would not have changed" if he had been properly advised. No. ACM 39479, 2019 CCA LEXIS 458, at *24–26 (A.F. Ct. Crim. App. 18 Nov. 2019) (unpub. op.).

The present case is distinguishable from *Kerr* and *Arnold*. In those decisions, legal advisors misunderstood the convening authority's plenary power to affect the results of a court-martial. Their legal recommendations were plainly erroneous. *Kerr*, unpub. op. at *3–4; *Arnold*, unpub. op. at *22–24. In both cases, legal advisors, including a staff judge advocate, who were involved in post-trial processing fundamentally misunderstood a convening authority's clemency power.

Here, there is no showing the convening authority was similarly misadvised or that he similarly misapprehended the scope of his authority. Unlike *Kerr* and *Arnold*, the error was not shown to have reached beyond the form of the action that the convening authority used to deny relief that Appellant wanted or could have sought. Accordingly, we consider the convening author-

ity's post-trial declaration and rely on it to find no material prejudice to Appellant's substantial rights owing to the procedural error in the form of the action.[20]

## II. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[20] Two judges of the panel find the convening authority's intent can be gleaned, moreover, from the words in the Decision on Action memorandum and the Air Force guidance in effect when the convening authority made his decision not to disturb the sentence. "[A] decision to take no action is tantamount to granting no relief." Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 13.17.1. (18 Jan. 2019). To be sure, the convening authority followed this guidance to his detriment by failing to take action on each component of the sentence. Despite the procedural error, the memorandum unmistakably conveys an intent to grant no sentencing relief to Appellant in line with the convening authority's post-trial declaration. For this additional reason, two judges of the panel conclude that Appellant was not prejudiced.